ELLIS, Judge.
This suit involves the expropriation of a triangular shaped piece of land containing 10.339 acres purchased by the defendant for $1000.00 per acre in 1953 and lying parallel to and east of the Kansas City Southern Railroad tracks in East Baton Rouge Parish, and severance damages to a one hundred acre tract, including the brick manufacturing plant located thereon, parallel to and west of the said railroad and separated from the ten acres by the right of way of said railroad and which was purchased as a result of the defendant having exercised a lease-purchase agreement in 1955. The Department deposited $43,-080.00 in the registry of the Court allegedly representing the market value of the land and improvements thereon consisting of a brick office building and “overflow” brick storage shed fifteen feet wide and seventy feet in length built of galvanized iron. The total sum deposited was composed of $2500.-00 per acre for the land and $18,000.00 representing the undisputed value of the above described buildings.
The case was duly tried and the lower court rendered judgment in favor of the defendant for the 10.339 acres expropriated in the sum of $3500.00 per acre, totaling $36,186.50, and for the improvements $18,-000.00, as agreed, for a total of $54,186.50.
*39 Judgment was also rendered in favor of the defendant for $62,686.72 representing severance damages to the remaining 100 acres on which the plant was located and which was the amount allegedly expended by defendants in order to relocate the operating and storage area together with other changes. Defendants contend the market value of the 100 acres and improvements thereon was reduced in this amount which was necessary to restore operating and “overflow” storage areas which were lost as a result of the expropriation.
Judgment was also rendered awarding expert fees and in all other respects the demands of defendant were rejected.
Plaintiff has appealed and defendant has answered, praying for an increase in the award as to the market value of the property expropriated from $54,186.50 to $80,-034.00 subject to a credit of deposit in the sum of $43,080.00. Also, they seek an increase in the severance damage from $62,-686.72 to $165,616.72, the latter figure being made up of $67,689.00, present value of increased maintenance of kiln cars predicated twenty-five years in the future, and $35,250.-00 for increased labor costs predicated twenty-five years in the future as a result of the expropriation of the 10.339 acres. Defendants further pray for an increase in the expert witness fees of Mr. Henderson from $200.00 to $500.00.
The defendant contends the market value of the land expropriated per acre was $6,000.00 and in the alternative, $4,500.00. Defendant also seeks severance damages as per its original and supplemental petition and oral motion for increase on the trial of the case, to its 100 acres lying west of the railroad in the following amounts, to-wit: (1) $62,686.72 actual cost of relocating the operating and storage area from expropriated tract to north side of plant; (2) $35,250.00 increased labor costs; (3) $67,689.00 increased maintenance costs on kiln cars; and (4) $24,000.00 loss of storage space and mineable clay deposits on four acres occupied by defendant’s plant to the north on the 100 acres which it was forced to use for extension as a result of the expropriation of the ten acre tract.
From the testimony offered by both parties it is evident the highest and best use of the 10.339 acres expropriated is for light, industrial use and particularly as an operating and storage area for “overflow” brick manufactured by the adjacent brick plant. It was so used at the time of the expropriation and for some years previous. The land also had value for its mineable clay deposits which existed to an average depth of 15 feet.
The defendant proved that clay of the type found on the land has a market value of 20 cents per cubic yard in place, and from that calculates the value per acre to be $6,000.00. The law, however, provides the value of minerals cannot be added to the price of the land expropriated, but rather the “ * * * land taken must be valued as land with the factor of mineral deposits given due consideration. * * * ” State of Louisiana, through the Department of Highways v. Hayward, 243 La. 1036, 150 So.2d 6. In setting the value of the land at $2,500.00 per acre, the appraisers for the State did not consider the presence of the mineable clay, nor any increase in price from the date of the comparable sale used as a basis of other valuation to the date of the expropriation on August 21, 1958.
Mr. William Munson, a witness for the defense, testified that the value of the land was $4,500.00 per acre. In arriving at this figure, he used eleven comparables, the best of which was the Newman-Dolese sale of 28,299 acres for $2,350.00 per acre, and upon which the State appraisers completely depended as a true comparable. That sale was completed eleven months before the instant expropriation. According to Mr. Munson, the time factor accounted for a $500.00 per acre increase in the value of land over the Newman-Dolese sale; and the fact that the expropriated property was a smaller tract and was bounded by a highway, accounted *40 for an additional $1,490.00 increase per acre.
Mr. Verdie Perkins and Mr. William Fort, two fee appraisers for the plaintiff, testified the Newman-Dolese sale at $2,350.-00 per acre was the best comparable, but that they had made no adjustment for the time factor, nor did they consider the greater value of the expropriated property because of its smaller size and access to a highway.
The trial judge noted that in 1953 Mr. Munson himself sold the subject property to Acme Brick Company for $1000.00 per acre and was satisfied with the price. Relying on this fact and the $500.00 per year per acre increase in the value of the land since 1953 which Mr. Munson testified was reasonable, the trial judge determined the value of the land was $3500.00 per acre on the date of the expropriation. We believe that such a finding is well supported by the evidence and accordingly the award of $54,186.50 as the value of the land and buildings, less a credit of $43,080.00 previously paid is affirmed.
The Department contends the 100 acre tract is a separate parcel from the ten acres expropriated herein according to the law and the jurisprudence, for which no severance damages could be claimed. The Department’s argument on this point is set forth in its brief and we quote in part:
“The trial court erred in its opinion that the property herein was in reality one single holding consisting of an entirety of 110 acres for which damages could be claimed.
“At the western boundary of the 10 acres expropriated herein was a branch line of the I.C.S. Railroad.
“Article 13, Section 3, of the [LSA-] Constitution of Louisiana reads as follows:
“ ’All railroads are hereby declared public highways, and every railroad company shall have the right, with its road, by expropriation, to intersect, connect with, or cross any other railroad, and shall receive and transport the others’ passengers tonnage and cars, loaded or empty, without delay or discrimination.’ (Emphasis added)
“Since a public highway bounds the subject property on the east, since the Constitution specifically states that ‘all railroads are public highways/ and a railroad bounds the property on the west, therefore, by perfect analogy, a ‘public highway’ bounds the property on the west.
“In La. Ry. and Nav. Co. v. Xavier Realty, 115 La. 328, 39 So. 1, our Supreme Court said that there could be no damages to remaining property other than that directly involved in the suit at issue. In addition, because other property of the landowner was contiguous did not imply damages. It further held that the property was separated by streets even though they had not yet been opened and consequently there could be no damages. When this jurisprudence is applied to this case, it is easily seen that the trial judge seriously erred in dismissing the railroad as not affecting a division of the ten acres and the 100 acres. * * * ” (Emphasis added)

“The only basis on which the trial court rested its belief that the property east and west of the railroad was a single tract is the case of State of Louisiana, through the Department of Highways, v. Williams, 131 So.2d 600 (1961) decided by the Court of Appeal, 3rd Circuit. Even if the Louisiana Ry. and Nav. Co. v. Xavier Realty case, supra, were not controlling, examination of the Williams case shows it presents facts entirely different from the instant case. * * * In view of the physical characteristics of the property concerned, the intervening railroad and *41 its ownership in a third party, the title description of the two parcels, the disparate zoning, the entirely different situation in the Williams case, the two (2) sales which were obviously made as two (2) different transactions involving two (2) separate parcels of land, the admissions of Mr. Munson which will be examined at greater length below, and the Xavier Realty case, it is submitted that these factors are more than sufficient to show the error of the trial court in decreeing that the subj ect property of ten acres was, in reality, a portion of an entire holding of 110 acres for which alleged damages could be claimed.”
In support of the above argument the Department contends the testimony of the defendant’s own expert appraiser is conclusive that the 10.339 acre tract expropriated was a separate parcel of land from the 100 acres on which the plant itself has been constructed to the west of the railroad track. If, under the facts, the law and jurisprudence, it is not a separate tract, the mere fact that the expert might have considered it as such in making his appraisal would not, in truth and fact, have any effect in reaching a decision on the question.
We do not believe there is any conflict in the Xavier Realty and Williams cases, supra. The rationale of these cases is the same. In the former the court set forth the law on which its decision was based and we quote:
“ * * * that where proceedings are instituted to condemn a right of way through a block, the owner cannot claim damages for injuries to property in another block, separated therefrom by a street the fee of which is in the city, no portion of which has been taken; and the fact that he purchased the property to be used as a whole for a polytechnic institute can make no difference, where the tracts are not used for any common purpose as one tract when the condemnation proceedings are instituted. White v. Metropolitan West Side Elev. R. Co., 154 Ill. 620, 39 N.E. 270. * * * ” (Emphasis added)
Again in the same case on the same page the Court stated:
“ * * * The court held that, in the absence of evidence tending to overcome the prima facie character of the lots as separate tracts, which had been given to them by the proprietors, the premises could not be treated as a whole in assessing damages, hut the damages must be limited to the lots, a part of which had been taken by the railroad company, and that the fact that the property was occupied by the lessee as one tract for the purpose of piling lumber could not affect the question, since this was a mere fugitive and temporary use, and not a natural and permanent one, such as would be necessary to constitute the whole premise as one tract. Koerper v. St. Paul and N. P. R. Co., 42 Minn. 340, 44 N.W. 195.” (Emphasis added)
In the Williams case our brethren of the Third Circuit considered the same question that is being posed in this case and also cited the Xavier Realty Company case. In its opinion the Court stated:
“In arguing that the defendants’ holding cannot be regarded under the circumstances as a single holding for the purposes of awarding damages, the Department relies upon the principle that ‘when the whole or a part of a particular tract of land is taken for the public use, the owner of such land is not entitled to compensation for injury to other separate and independent parcels belonging to him which results from the taking.’ 4 Nichols, The Law of Eminent Domain (3rd ed., 1951) Section 14.3, p. 426. See Louisiana Ry. & Nav. Co. v. Xavier Realty Co., 115 La. 328, 39 So. 1.
*42 “As stated by the cited treatise authority, ordinarily whether a landowner’s holding constitutes a single tract or not for purposes of determining severance damages is a practical question to be decided by the trier of fact, which trier ‘should consider evidence on the use and appearance of the land, its legal divisions and the intent of the owner and conclude whether on the whole the lots are separate or not. In such cases the land itself rather than the map should be looked at, and one part of the parcel is not to be considered separate and independent merely because it was bought at a separate time from the rest and is separated from it by an imaginary line.’ Id., Section 14.31, pp. 431— 432. See State through Department of Highways v. Yawn, La.App. 3 Cir., 127 So.2d 545. As'the treatise continues, ‘a public highway actually wrought and travelled, a railroad, a canal, or a creek running through a large tract devoted to one purpose does not necessarily divide it into independent parcels, provided the owner has the legal right to cross the intervening strip of land or water.’ Id., 14.31(1), pp. 433-435.
“We regard this summary as correctly stating the principles to be applied in Louisiana in deciding the question, and no controlling contrary authority is cited to us. The trial court correctly applied these principles in determining that, as a matter of fact, the defendants’ property consisted before the taking of a single 120-acre tract suitable for industrial purposes. For, as the evidence indicates, the owner had the legal right to cross the railroad and pipeline servi-tudes and the legal right to use the pipeline rights of way for many purposes, all of which under the circumstances reflected by this record constituted these rail and pipeline rights of way an asset in the integrated industrial use of the entire tract (even though there was a lessened fee value of the strips themselves actually subject to the rail and pipeline servitudes).
“An award in expropriation proceedings should take into consideration ‘all factors which lead to a replacement of the loss caused by the taking1 and should place the owner ‘in as good a position pecuniarily as he would have been had his property not been taken.’ State through Dept. of Highways v. Ragusa, 234 La. 51, 99 So.2d 20, 21. ‘As long as the acquisition adversely affects the market value of the remaining property, any type of injury would seem to be recoverable as severance damages.’ Comment, ‘Expropriation-Consequential Damages Under the Constitution,’ 19 La.L.Rev. 491, 495-496 (1959).”
The record is devoid of any showing that the railroad right of way dividing the ten acres and the one hundred acres in the case under consideration was held under a title in fee and in the brief of the defendant the statement is made that it enjoyed a servitude only, but regardless of this fact, there is no question but that the defendant had a right to cross and re-cross this railroad right of way and did so many times per day, and both tracts were used for a common purpose.
We believe the lower court correctly determined the property expropriated was not a separate tract of land “but was a part of a one hundred ten acre tract of land”. On this point in his written reasons the judge of the lower court found:
“The 100 acres on which the plant is located was leased under a three year lease purchase agreement. The property expropriated was purchased on March 31, 1953, this being before Acme Brick exercised the right to purchase the 100 acres on the west side of the railroad. The 100 acres was later purchased on October 31, 1955. However, even before Acme Brick purchased the expropriated 10 acres they used it for storage area as testified by Mr. Mun- *43 son. Realizing that the plant had been built by the original owner without the necessary amount of storage space on the west side of the tract, Acme Brick purchased the expropriated property on the east side to give them sufficient storage space. Therefore, it is important to note that as soon as Acme Brick started operating the plant, they also started to use the property expropriated, for storage space. The property on both sides of the railroad were therefore used for the same purpose, namely, the manufacture of brick. Also important to note is the fact that Acme Brick had the right to cross the railroad right-of-way and as one witness testified, they did cross it a hundred times a day.
“In conclusion, even though the land on both sides of the railroad were purchased at different times, both tracts were used for the same purpose. Thus, the property expropriated was not a separate tract of land but was a part of a 110 acre tract of land. * * * ”
We therefore hold the ten acre tract expropriated herein, is not a separate parcel under the facts, law and jurisprudence, and the defendant was entitled to offer testimony that the expropriation of the ten acres had adversely affected the market value of the remaining property so that it was entitled to severance damages.
We must next consider the question of severance damages. Although we believe the lower court correctly denied severance damages in the amount of $24,000.00 for loss of the clay deposits on four acres occupied by the extension of defendants’ plant to the north, this item is not before this court on appeal as the defendants have limited their answer to seeking an increase only in the above stated amounts.
We affirm the ruling of the lower court and quote his reasons for denying severance damages in the amount of $67,-689.00 for increased maintenance costs of kiln cars predicated twenty-five years in the future and $35,250.00 for increased labor costs of an extra employee in connection with the operation and maintenance of these kiln cars for twenty-five years in the future, as follows:
“Defendant asked for damages of $67,-680.00 for the increased maintenance cost of 160 kiln cars over a 25 year period; and also for $35,250.00 for increased labor cost of an extra hand to handle and maintain these kiln cars, at $2,500.00 a year for 25 years. Both of these items are two problematical, uncertain and speculative to form a basis for any kind of a judgment and all three of the last above named items are rejected.”
Additionally, even if these items could be proven they are not recoverable as severance damages to the remaining 100 acre tract for it is well established that the measure of such damages is the difference between the market value of the remaining property for sale or rental purposes immediately before and after the expropriation. State of Louisiana through Department of Highways v. Central Realty Co., 238 La. 965, 117 So.2d 261, 265; Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354; American Tel. & Tel. Co. of Louisiana v. Maguire, 219 La. 740, 54 So.2d 4 and Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260.
It is also well-settled that consequential injuries such as injury to business and business losses are not compensable.
In State of Louisiana, through the Department of Highways, v. Hub Realty Co., Inc., 239 La. 154, 118 So.2d 364, 369, the following language appears:
“In expropriation proceedings, no compensation is awarded for business losses, even though the business is in actual operation at the time of the expropriation proceedings. No compensation is awarded for the loss of actual rents based on a percentage of actual business *44 being done. Still less can compensation be awarded for speculative and imaginary business losses.”
In Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295, 299, the Supreme Court held as follows:
“Defendants claimed damages of $500 for the loss of music pupils. Counsel for defendants admitted that this item is purely speculative and not susceptible of proof. Defendants also claimed $250 for inconvenience. In the case of McMahon and Perrin v. St. Louis, Ark. & Tex. R. Co., 41 La.Ann. 827, 6 So. 640, it was held that mere consequential injuries to owners of property, arising from discomfort, disturbance, injury to business, and the like, are sacrifices which society has the right to ask for the public good, and are not compen-sable.”
The rule was enunciated as follows in State, through Department of Highways, v. Sauls, 234 La. 241, 99 So.2d 97, 102, which is certainly applicable herein :
“There is no merit in defendant’s contention that his remaining property i. e., his grocery merchandise, trade fixtures, and furnishings of the rental units, were ‘damaged’ due to the taking, the measure of such damage being the diminution in their value upon resale; and that the trial judge erred in excluding evidence to show the loss suffered. It is well settled that mere consequential injuries to the owners arising from disturbance or injury to business are damna absque injuria. Yet it is said that defendant, because he was unable ‘to purchase other property of like value or location in the neighborhood,’ was ‘forced to liquidate his grocery merchandise, trade fixtures, and apartment furnishings,’ and that such liquidation was a ‘result of the expropriation of his properties.’ The novel claim that a person whose property is expropriated should be indemnified for being unable to reestablish his business in property of like value in the same neighborhood finds no support in law or reason. The liquidation was defendant’s own decision, and any loss suffered as a result thereof is not compensable.”
In the case of McMahon v. St. Louis, Ark. & Tex. R. Co., 41 La.Ann. 827, 831, 6 So. 640, the Supreme Court laid down the salutary rule which has been followed consistently, as evidenced by the numerous cases, three of which have just been cited above:
“As in the case of a taking the measure of compensation is the value of the property taken, so in the case of damages the measure of compensation is the diminution in the value of the property.
“There is no warrant for extending the liability one whit beyond this. We are simply to inquire what damage has been done to the property, i. e., to its value for rental and sale. Mere consequential injuries to the owners, arising from discomfort, disturbance, injury to business, and the like, remain, as they were before, damna absque injuria, — particular sacrifices which society has the right to inflict for the public good.”
In State of Louisiana, through the Department of Highways v. Glassell, 226 La. 988, 77 So.2d 881, 887, the Supreme Court specifically held that increased costs of operation are too remote and speculative to form the basis of an award.
And in Central La. Elec. Co. v. Covington and St. Tammany L. & I. Co., 131 So.2d 369, 380, this court said, in no uncertain terms :
“Proof of severance damages must be certain and positive as distinguished from uncertain, indefinite, speculative, remote or conjectural.”
Counsel for the defendant in supplemental brief on the question of severance damages contends that the reasonable cost of restoring such damages is a proper meas *45 ure thereof, and in support of this contention his supplemental brief contains the following argument:
“In State v. Caldwell Brothers Real Estate, Inc. [La.App.], 155 So.2d 231, the expropriation interfered with the drainage of defendant’s property, making necessary that defendant either drain the effluence from their plant into an open ditch alongside the highway or construct new drainage facilities. The Court concluded that defendant had suffered damage to the extent of whatever expenditures would be necessary to provide and install the new drainage system. The case was remanded for the reception of further evidence having to do with the amount of this damage the Court commenting:
“ * * * With relation to the nature of this proof, and in the hope that it may serve as a guide to further proceedings, we observe that, while it is true that the most general and acceptable rule for establishment of damage relates to diminution of market value, it must be pointed out that under certain circumstances such a method is neither fair nor just. The alternative procedure is the establishment of the reasonable cost of restoring the damage, upon the principle that the owner shall be put in as good position pecuni-arily as if his property had not been taken.” State through Department of Highways v. Barrow, 238 La. 887, 116 So.2d 703; Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295; Texas Gas Transmission Corporation v. Fuselier (3rd Circuit, 1961, writs denied), La.App., 133 So.2d 828; State through the Department of Highways v. Cook et al (2nd Circuit, 1960, writs denied), La.App., 124 So.2d 221.
In this case we find the facts set forth by the Court as follows:
“The facts are not in dispute. For some seventeen years defendants have operated a slaughter house and other facilities appropriate to a meat processing plant in the course of which an average of some 500 cattle and 1,000 hogs were slaughtered per month. The plant itself is located on the northerly half of the property and there existed a natural drainage slope from north to south. By means of a sewerage pipe the offal and effluence from the slaughtering operations were drained into a creek or bayou, located at the extreme southwest corner of the property, by which natural drain the refuse was carried into an abandoned and exhausted gravel pit on adjoining property. This system of disposal had been approved by the appropriate health authorities. The effect of the expropriation of property and a servitude of drain by plaintiff deprived defendants of this long established and completely satisfactory means of disposal. In support of their claims as to a right to consequential damages, defendants asserted that the cost of provision and replacement of necessary disposal facilities would amount to approximately .$15,000,000, for the allowance of which amount they pray in this action. With relation to their rights, defendants filed a special plea of prescription, acquirendi causa, of a servitude of disposal and drainage from their property over and across the lands taken and expropriated, which plea was overruled.
“The trial judge was of the opinion that defendants' failed to prove their claims of special damages, and, therefore, rejected their demands.” (Emphasis added)
* * *
“There is some contention on behalf of plaintiff in the instant case that the damages claimed by defendants has not been caused by the actual taking of their property but by the taking of property theretofore belonging to the Parish of Ouachita and apparently embracing a portion of the stream into which defendants’ drainage pipe emptied. We think this contention is with *46 out merit for several reasons; First, because plaintiff did take a portion of defendants’ property at the extreme southwest corner; second, that plaintiff did take the right of a servitude of drain, and, finally, because these acts and the plans of construction of the highway clearly indicate that defendants’ drainage facilities were totally and completely destroyed by plaintiff’s acts of expropriation. The record convincingly justifies the conclusion that because of plaintiff’s actions defendants are confronted with the necessity of draining the effluence from their plant into an open ditch alongside the .highway or of constructing new drainage facilities. It was clearly established that the first action would not be permitted by the health authorities, and the only reasonable conclusion is that defendants have suffered damages to the extent of whatever expenditures are necessary for providing and installing a new drainage system.
“The principle that a right-of-way once obtained, whether denominated as an easement or servitude, is property .and that damage to its use by the owners thereof is equivalent to taking of property, we think has been well established. Such a principle was enunciated by this Court in Arkansas Louisiana Gas Company v. Louisiana Department of Highways, 2nd Circuit, 1958, writs denied), La.App., 104 So.2d 204, upon the basis of numerous authorities therein cited.” (Emphasis added)
We do not consider the Caldwell case as in any wise contrary to the established law set forth in tire above cited cases for the facts show that the State actually expropriated the defendant’s servitude of drain which the Court recognized as property, and damage to its use by the owners was equivalent to a taking of property.
In the case at bar we are not concerned with the taking of an easement or servitude in addition to the ten acres, for which the trial court awarded full value, and the office building, which the defendant referred to as a part of the operating area because it housed the office personnel of the company, and was also used as parking space for motor vehicles, and the galvanized building 15 feet by 70 feet which was used to store “overflow” brick and for which operating and “overflow” storage area the defendants were paid an agreed price of $18,000.00. In effect, defendants are contending that although they have been paid in full for the loss of the operating and “overflow” storage areas that they should now be paid for restoring these areas on the 100 acres which they claim was done at a cost of $62,686.72. This contention is based upon the argument that the taking of these two areas reduced the market value of the 100 acres and the plant in the amount necessary, not only to restore these areas on the 100 acres, but also made it necessary to change the operation of the plant. We find no merit in the defendant’s contention and are of the opinion this item as claimed has not been established as any severance damages to the remaining property. The cases above cited by this court in support of the lower court’s rejection of the claim for severance damages in the amount of $67,680.00 and $35,250.00 are equally appli-' cable to this claim.
We are, therefore, firmly of the opinion that defendant was fully paid for the loss of its operating and “overflow” storage area and the 10.339 acres expropriated, and that there were no severance damages, that is, any difference between the market value of the 100 acres west of the track for sale or rental purposes immediately before and immediately after the expropriation.
For the above and foregoing reasons the judgment of the district court is reversed wherein it awards severance damage in any amount whatsoever, and otherwise is affirmed.
Affirmed in part and reversed in part.