ELLIS, Judge.
On August 21, 1958, the State of Louisiana, through the Department of Highways, expropriated all of a certain parcel of unimproved land in East Baton Rouge Parish for the Alsen-Port Hudson Highway and deposited $7450.00 into the court registry. By an amended petition and amended order of expropriation dated May 8, 1962 the description of the parcel was corrected and an additional $899.00 was deposited. After trial on the merits the lower court rendered judgment fixing the value of the expropriated parcel at $23,997.25 from which determination the State has appealed. The defendants have answered the appeal seeking to have the award increased to $42,-495.00.
*924 The parcel of land on which this court must fix a market price as of the date of the taking contains an area of 6.636 acres and fronts 928.78 feet on Scenic Hig'hway with a depth on its north side of 483.74 feet and a depth on its south side of 124.11 feet. The rear of the property measures 963.05 feet. Because of the existence of two servitudes on the subject property, it is convenient to consider it in three parts: the first or unencumbered portion containing 3.036 acres; the second portion containing .8 acre, subject to a servitude for the Baker Canal which lies on the north side of the property; and the third portion containing 2.8 acres subject to a servitude for the KCS railroad tracks which cross the west side of the property.
It is clear that the determination of value fixed by the trial court cannot be approved. The value was determined by averaging the opinions of the four experts who testified, two for each side. The averaging of opinions, though very convenient and probably sound in a case where there is very little difference between the opinions of the various experts, cannot be resorted to to reconcile greatly divergent estimates. To do so would encourage gross exaggerations on both sides and produce wholly unreliable expert testimony. Greater Baton Rouge Consolidated Sewer Dist. v. Nelson, 144 So.2d 186.
Just as it is clear that the method of arriving at the award of the lower court cannot be approved, it is equally certain that the amount deposited by the State is inadequate. The evidence indicates that some seven months before the initial order of expropriation the State secured an appraisal of the unencumbered portion of the parcel from Mr. William J. Fort and Mr. Verdie Reece Perkins in the amount of $7450.00.
A supplemental appraisal was ordered by the State from Messrs. Fort and Perkins and this was made and submitted, taking into consideration the comparable sales in the area during the intervening seven months. Inasmuch as these gentlemen were not called by the State, their failure to testify must be construed against the State.
The final certificate of value attached to the supplemental petition and supplemental order of expropriation was signed by Mr. Leroy Cobb and Mr. John Lejeune who estimated market value as of August 21, 1958 at $8349.00 and $8295.00, respectively. However, Mr. Cobb did not include any amount for the 2.8 acres comprising the railroad servitude and Mr. Lejeune assigned it only a nominal value of $10.00. The evidence indicated that there was only a single interstate track running through the center of a 100 foot wide right-of-way. The co-existent but subordinate right to use the 2.8 acres, together with the naked ownership thereof, has a value.
Mr. Heidel Brown, with the property owner’s other expert, Mr. Kermit Williams, concurring, divided the 2.8 acres into two' equal parts, assigning a proportionate value per acre, as compared with the per acre value of the unencumbered portion, of one-fourth to that part east of the railroad and one-eighth to that part west of the railroad and, therefore, somewhat inaccessible. While these fractions are necessarily arbitrary, we are impressed with the reasonableness of this approach and accept it as the proper method for calculating the value of the 2.8 acres once the per acre value of the unencumbered portion has been determined.
With reference to the .8 acre lying at the bottom of Baker Canal, Mr. Williams assigned a value of $875.00 to this on the theory that it would act as a buffer from competition and provide for waste disposal. Mr. Brown was of the opinion that its value was offset by its liability to the adjoining 3.036 acres. We are impressed with this conclusion, and accordingly will not allow any amount for the title to the submerged land nor subtract any amount *925 because of the proximity of the subject property to a large canal.
Having arrived at the appropriate formula to apply to the per acre value of the unencumbered property in order to calculate the market price of the whole, we turn to a consideration of that value. Needless to say, there is a wide difference of opinion between the two groups of experts as to the per acre value of the 3.036 acre unencumbered part. The experts found this value to be as follows:
Cobb $ 2750.00
Lejeune 2725.29
Brown 10416.66
Williams 10457.84
The most reliable and approved method for determining the market value of an immovable is to consider comparable sales. This is so well established and accepted that citation of authority would be superfluous. Whether or not a sale is in fact comparable to the subject property is often a perplexing problem over which experts frequently disagree. There is never a fully comparable sale, that is, one of property exactly like the subject property. If there were, there would be no need to litigate the issue of value in that case. It is, therefore, necessary in all cases, to make some adjustment, either up or down, to bring the sale into comparability with the subject property. Both the direction and amount of the adjustment are matters of opinion over which reasonable men and conscientious qualified appraisers will differ. Courts must examine the sales purported to be comparable and analyze the reasoning on which the expert’s opinion is founded. Appropriate weight must then be given to the various opinions and the value of the property established with some degree of precision. We turn now to a consideration of the sales purported to be comparable.
Mr. Lejeune and Mr. Cobb relied on three comparables, namely, Murphy to Scenic Heights Corporation dated February 4, 1958; Newman to Dolese Concrete dated September 20, 1957; and General Realty to Watson dated May 13, 1958.
The first of these was a tract containing 16.5 acres lying across Scenic Highway from the subject property. It was without railroad frontage and cannot be considered comparable for the additional reason that the vendor was president of the vendee corporation. The per acre price was $2006.00. In addition, on July 2, 1959, Scenic Heights Corporation sold 2.852 acres of that property to Southern Utility Supply Co., Inc., for a price of about $5400.00 per acre.
The second comparable likewise has serious limitations. The Dolese Concrete property has a depth of more than ten times the average depth of the subject propcity and contained 28.299 acres. The per acre price was $2350.00. It did front on Scenic Highway and have railroad access. However, the experts for the defendant pointed out that on the same day that sale took place, Newman sold another tract containing 129.77 acres to North Batan Rouge Development Co. for only $1562.00 per acre. The chief difference beyond the obvious one of size is that the Dolese property fronted on Scenic and the North Baton Rouge Development Co. property did not. These experts further pointed out that by separating that frontage from the remainder of the Dolese property and valuing that front by using the Munson to Gulf States sale as a comparable, the remaining portion per acre equalled the North Baton Rouge Development Co. price per acre.
The third comparable used was the sale from General Realty to Watson. This was an area of 11.91 acres having a depth of approximately 2800 feet. It had only ten feet of railroad frontage and no frontage on Scenic Highway. The price per acre was $2,977.50.
Mr. Cobb used a fourth comparable, that being a sale from the defendant, William Warren Munson, to Best Manufacturing *926 Company on August 5, 19SS. The Best property is immediately to the west of the subject property, contained 10 acres, and sold for $1,000.00 per acre. However, Mr. Cobb was not familiar with the subject property in 1958 and did not appraise it until a few months prior to the trial. The evidence showed considerable industrial development and potential development in the area from 1955 to August, 1958, and these changed conditions greatly impair the utility of the Best sale as a comparable.
The defendant’s experts relied on three other sales which they insist are comparable and should be used in establishing the value of the subject tract. These are Munson to 'Gulf States Utility Co. on May 12, 1958; Brown to Gabler #1 on May 29, 1958; and Brown to Gabler #2 on February 25, 1959.
The first of these, the sale to Gulf States, was for .51 acres fronting on a railroad. While, as a technical matter, Gulf States may have acquired title to the railroad right-of-way and thus frontage on Scenic Highway, certainly there was no direct access to the highway and, therefore, the two properties lack comparability on this important point. On the other hand, Scenic Highway frontage would appear to be no .advantage to Gulf States as the site was used for a transformer installation. There is a well established principal that small tracts will command a higher per acre price than larger tracts, and this sale represented about one-sixth of the unencumbered .•area of subject property or one-thirteenth •of the whole. The price per acre for this •sale was about $10,000.00.
The second comparable was Brown to Gabler #1. This was an area of 1.34 acres fronting on Scenic Highway and a railroad. This court would consider it of sufficient comparability to be useful except for the fact that there is situated on it a brick residence with a replacement cost of $32,000.00 and a canal about fifty feet wide. The sale was for only $25,000.00. Mr. Brown offset the residence and the canai and thus considered the entire price as applicable to the land. Mr. Williams assigned a value of $5,000.00 to the residence, leaving $20,000.00 applicable to land.
The third comparable was Brown to Gabler #2. This was an area of .455 acre fronting on Scenic Highway and a railroad for a price of $7360.00 and had no improvements. The evidence indicated, however, that the additional area was more valuable to Gabler than anyone else, as it was required to square his existing property and provide adequate area for a warehouse.
It appears that none of the comparables relied on by the experts is useful without a considerable adjustment. The court is of the opinion that no satisfactory means for making those adjustments were provided. The most comparable sale in evidence is Brown to Gabler #1. The adjustments necessary to bring that tract into comparability with the subject property as to time, size, shape, location and accessibility are negligible. The real difficulty is to segregate that portion of the purchase price applicable to the land from that part applicable to the residence. There is absolutely no evidence in the record on which this court can rely in making that determination. The court cannot use the replacement value of $32,000.00 when the total sale for land and improvements was only $25,000.00. Nor can the Court treat the residence primarily as a liability and assign thereto an arbitrary value of $5,000.00 or offset it against the canal.
In the case of State Dept, of Highways v. Acme Brick Co., 162 So.2d 37, this court had for determination the value of an adjacent 10.399 acre triangular shaped tract expropriated the same day as the subject property. The State had estimated the value of that land at $2500.00 per acre. Relying in large measure on the expert testimony of William Warren Munson, one of the defendants in this case, this court determined a value per acre for the Acme property of $3500.00. This determination was based on the Newman to Dolese sale *927 which both litigants considered comparable. To the $2350.00 per acre value of the Dolese property Mr. Munson added $500.00 per year to adjust the time factor and $1490.00 to adjust the size factor and to reflect the highway frontage of the Acme tract. His estimate was $4500.00 per acre. Mr. Mun-son himself had sold the property to Acme in 1953 for $1000.00 per acre, which he considered a satisfactory price at that time.
Mindful of the fact that the subject property is smaller than the Acme tract and that while the highest and best use of the Acme tract was as a storage area for brick, the highest and best use of the subject property is light industrial or future-commercial, we believe that $4000.00 per acre will adequately compensate defendants.
The total value of the unencumbered portion is thus calculated to be $12,144.00, The value of the 2.8 acres burdened with-a railroad servitude is $2100.00. Defendants are therefore entitled to judgment for $14,244.00. Inasmuch as the lower court awarded $23,997.25, that judgment is reduced at defendants’ cost to the sum of $14,244.00.
Amended.