200 So.2d 384 (1967)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Shelley Joseph MOULEDOUS, Defendant-Appellee.
No. 1911.
Court of Appeal of Louisiana, Third Circuit.
April 26, 1967.
On Rehearing June 29, 1967.
*386 D. Ross Banister, Ben C. Norgress, Glenn S. Darsey, Johnnie Branch, Jr., Baton Rouge, Robert J. Adams, Lafayette, Marshall *387 W. Wroten, Baton Rouge, for plaintiff-appellant.
Deshotels & Maraist, by Frank Maraist, Abbeville, for defendant-appellee.
Before TATE, FRUGE and HOOD, JJ.
HOOD, Judge.
This is an expropriation suit instituted by the State of Louisiana, through the Department of Highways, against Dr. Shelley Jeseph Mouledous, under the provisions of LSA-R.S. 48:441 et seq.
Plaintiff deposited the sum of $15,102.00 in the registry of the court as just compensation for the property taken. Defendant filed an answer in which he demands that the value of the property taken be fixed at a sum which is substantially greater than the amount deposited, and that an additional sum be awarded to him as damages. After trial, judgment was rendered by the trial court awarding defendant the additional sum of $30,308.39 as the value of the property taken, and the additional sum of $29,262.03 as severance damages. Plaintiff has appealed.
This case was consolidated for the purposes of trial and appeal with a companion suit, State of Louisiana, through the Department of Highways, v. Mouledous, La. App., 199 So.2d 185 (bearing No. 1910 on the docket of this court.), and we are deciding both of these cases on this date.
In this proceeding plaintiff has expropriated the full ownership, less minerals, of three parcels of land, comprising a total of 7.164 acres, and being a part of an 80.15 acre tract owned by defendant in Vermilion Parish. The property was taken for use in the construction of a hard surfaced public highway, which is referred to here as the Abbeville By-pass Highway. The parent tract from which the above mentioned parcels have been taken is located west of and near the corporate limits of the city of Abbeville. The parent tract is high, level, well drained land, and prior to this taking it was undeveloped, there being no roads, streets or improvements of any kind on it at that time. All of the property being expropriated in this suit is located west of U. S. Highway 167.
In March, 1961, the defendant filed a plat of survey in the Conveyance Records of Vermilion Parish, which plat purports to subdivide most of the parent tract, together with other lands owned by defendant on the east side of U. S. Highway 167, into 173 lots, with a number of streets and alleys being shown on the plat. Attached to this plat is an authentic act executed by defendant on March 1, 1961, which designates the subdivision as "Shangri-la Subdivision," imposes a number of building restrictions on the lots, and provides that the streets and alleys shown on that plat are dedicated to the public at large for public use. The northeast portion of the parent tract, consisting of 21.732 acres, was not subdivided and was not included in Shangri-la Subdivision, although this excluded area was owned by Dr. Mouledous.
On April 13, 1962, Dr. Mouledous executed an "Act of Correction, Amendment and Revocation in the Matter of Dedication of Shangri-la Subdivision," which purports to revoke the dedication of certain alleys shown on the above described plat, and to change the areas theretofore shown as alleys into servitudes for utility purposes. In that document, defendant stated that "he is the 100 percent owner" of the lots shown in that subdivision, that no lots had been sold, and that he revokes and sets aside certain restrictions which theretofore had been placed on those lots in the act of dedication.
The Police Jury of Vermilion Parish has never formally accepted the dedication of streets and alleys in this subdivision. It did adopt two ordinances on June 19, 1962, however, one of which purports to abandon certain alleys in the Shangri-la Subdivision, as requested by Dr. Mouledous. The other provides that thereafter before any subdivision is accepted by the Police Jury *388 "all streets therein shall be hard surfaced, the drainages shall be adequate and the sewerage system in said subdivision shall meet the requirements of the Board of Health."
The three parcels of land expropriated consist of all or portions of 64 lots in the Shangri-la Subdivision, together with portions of certain alleys shown on the plat of that subdivision. The property taken comprises a total of 7.164 acres, and it forms a strip of land running generally east and west through the above mentioned subdivision, extending from the western boundary of the subdivision to U. S. Highway 167 on the east. All of the property taken is located on the west side of U. S. Highway 167.
A plat of the Shangri-la Subdivision is attached as an appendix to this opinion. The shaded areas on the plat, identified as "A", "B" and "C", are the parcels of land which have been expropriated in this suit. Other tracts of land owned by the defendant and located east of U. S. Highway 167 were expropriated by plaintiff in the companion suit (No. 1910 on our docket).
The instant expropriation suit was instituted and the order of expropriation was signed on November 30, 1962. On December 31, 1962, an order was signed by the trial judge permitting the defendant to withdraw the amount deposited in the registry of the court, without prejudice to his right to claim compensation and/or damages in excess of the amount so withdrawn.
The construction of the Abbeville By-pass Highway on and along the right of way herein expropriated was completed on June 29, 1964. An answer was filed by the defendant on December 7, 1964, alleging that the value of the property expropriated should be fixed at $52,626.64, and that defendant has sustained severance damages in the sum of $29,262.03 as a result of the expropriation. A supplemental and amended answer was filed by the defendant on August 13, 1965, alleging that in addition to the amounts theretofore claimed he also is entitled to an award of $12,500.00 as the "expropriated value or damages from Shangri-la ditch." In support of this last mentioned demand, defendant alleges that in constructing the new highway it caused much greater volumes of water to drain through "Shangri-la ditch," which traverses other property owned by defendant east of U. S. Highway 167, that plaintiff caused that ditch to be widened, that it is necessary to place 72-inch concrete pipes in the ditch and to cover those pipes with dirt in order to restore the lots affected to their former usefulness, that the cost of installing these pipes is $12,000.00, and that if the pipes are not installed and covered that portion of defendant's property which is traversed by this ditch will be depreciated in value to the extent of $12,500.00. He contends that he is entitled to recover $12,500.00 from plaintiff as damages because of the widening of this ditch. This demand, of course, is the same demand which was made by defendant in the companion suit (No. 1910).
We will consider first the demand of defendant that he be awarded a greater sum of money than that deposited by plaintiff as the value of the property expropriated.
Five qualified appraisers testified at the trial, three of whom were called by defendant and two testified in behalf of plaintiff. All of these appraisers felt that the highest and best use of the subject property prior to the taking was for subdivision purposes, and each used the market data approach in determining the market value of the property which was taken.
Maurice Chappuis, one of the appraisers called by plaintiff, valued defendant's property at $2400.00 per acre at the time of the taking, and he concluded that the 7.164 acres expropriated had a market value of $17,935.00 at that time. Leroy Cobb, the other appraiser for plaintiff, valued it at $2000.00 per acre, or $14,328.00 for all of the property taken.
*389 The three expert realtors who testified for defendant, William D. Gooch, Lawrence F. LaPorte and Robert Duhon, made a separate appraisal of each of the 64 lots which were affected by the taking. They then computed the value per square foot of each such lot, and they made their determinations as to the value of the property taken by multiplying the square foot value of each of said lots by the number of square feet of the lot which had been taken. By using that procedure all three of the appraisers called by defendant agreed that the property taken had a value of $45,410.39 at the time of the taking. One of these appraisers, Mr. LaPorte, also valued the strips of land which are designated as alleys on the plat at the additional sum of $4582.00.
The substantial difference between the appraisals made by the appraisers called by plaintiff and those called by defendant is due largely to the fact that plaintiff's experts considered the property as being raw acreage, suitable for development as a subdivision, and they thus appraised it on a per acre basis. Defendant's appraisers considered the property as being a part of an existing subdivision, with dedicated streets, and they appraised the area taken on a per lot or square foot basis. Most of the comparable sales considered by plaintiff's appraisers were sales of undeveloped land, while the prior sales considered by defendant's appraisers related mainly to lots in the Mount Carmel Heights Subdivision, which is an existing, developed, residential subdivision, located immediately south of and adjacent to the subject property. In each instance, of course, adjustments were made in the prices paid in order that the comparable sales could be related to the property involved here.
The trial court rejected the opinions as to value which were expressed by the appraisers who testified in behalf of plaintiff, and he accepted substantially all of the testimony of the experts called by defendant. He concluded that the property taken by plaintiff in this proceeding had a market value of $45,410.39. Defendant had already received $15,102.00 from plaintiff, so judgment was rendered by the trial court awarding him the additional sum of $30,308.39, as the value of the property expropriated.
The compensation to be awarded in expropriation suits is the market value of the property in the condition in which it existed at the time of the taking. The term "market value" has been defined as the price which would be agreed upon between a willing and informed buyer and a willing and informed seller, under usual and ordinary circumstances. It is the highest price, estimated in terms of money, which the land will bring if exposed for sale on the open market, with a reasonable time allowed to find a purchaser buying with knowledge of all the uses and purposes to which it is best adapted and for which it is capable of being used. State, Department of Highways, v. LeDoux, 184 So.2d 604 (La.App. 3d Cir. 1966).
If the potential use of the property for residential subdivision purposes is remote or speculative, or if its use for that purpose would require the concurrence of so many extrinsic conditions or happenings that it would have no effect on the present market value, then the property should not be valued on a per lot or square foot basis as being subdivision property. Under those circumstances, and as stated by our Supreme Court in Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491,
"The measure of compensation in such instances should not be the aggregate of the prices of the lots into which the tract could be divided, for so many contingencies may intervene as to make such measure of compensation too uncertain and conjectural. The test is the market value of the land as a whole, taking into consideration its value for building purposes of a not too speculative nature."
On the other hand, if the potential use of the property for residential subdivision *390 purposes is reasonably prospective, as distinguished from remotely prospective, so as to remove said potential use or classification from the realm of guesswork, speculation and conjecture, then the property may properly be classified and valued as subdivision property. If it is shown that the property can be put to such a use within the reasonably near future, the owner is entitled to be compensated on the basis that it is subdivision property, and the court may properly consider its value on a per lot or square foot basis. The reason is that if the best use of the property is for subdivision purposes within the reasonably near future, a prospective purchaser would, as a matter of course, compute the manner in which he could ultimately sell the property in order to bring the highest possible price, regardless of any previous subdivision plan. He would consider the number of lots which would be available and the possible selling price of each, with due consideration being given to all of his costs in developing the land, and he would then determine the price he would be willing to pay for the whole of the property. State, Department of Highways, v. Rapier, 246 La. 150, 164 So.2d 280 (1964); State, Through Dept. of Highways v. Hedwig, Inc., 133 So.2d 180 (La.App. 4th Cir. 1961, Cert. Denied); Central Louisiana Electric Co. v. Harang, 131 So.2d 398 (La. App. 1st Cir. 1961); State, Department of Highways, v. Fontane, 185 So.2d 573 (La. App. 1st Cir. 1966, Writ Refused); State, Department of Highways, v. Busch, 188 So.2d 495 (La.App. 3d Cir. 1966, Writ Refused); State, Through Dept. of Highways v. Riley, 143 So.2d 396 (La.App. 3d Cir. 1962, Cert. Denied).
In the instant suit, the evidence convinces us that at the time of the expropriation, the use of defendant's property for subdivision purposes was reasonably prospective, as distinguished from remotely prospective, so as to remove its potential use or classification for that purpose from the realm of guesswork, speculation and conjecture. The property had previously been surveyed and platted into lots, with streets and alleys. The streets had been dedicated for public use, and plaintiff obviously considered them to be public streets since it did not expropriate the area within any such street. The property is located immediately north of and adjacent to an existing, fully developed subdivision. The appraisers called by defendant were of the opinion that there was an immediate demand for lots in Shangri-la Subdivision, and that such lots were more desirable than were those in the developed subdivision to the south.
Since the potential use of defendant's property as a residential subdivision was reasonably prospective, and the land was in the process of being put to that use at the time of the taking, we find no error in the action of the trial court in considering the value of each lot in arriving at his conclusions as to the value of the property which was taken. We cannot say that he erred in accepting the values placed on the land by the defendant's appraisers, and we thus affirm the award made by the trial court of $30,308.39, in addition to the amount deposited by plaintiff in the registry of the court, as the value of the property expropriated.
The next question presented relates to the claim of defendant for severance damages. As we have already pointed out, he claims $29,262.03 as severance damages to his remaining property located west of U. S. Highway 167, and the additional sum of $12,500.00 as damages to property owned by him located east of that highway.
In arriving at their conclusions as to severance damages, defendant's appraisers considered separately each lot which had been partially taken. They first deducted the value of the part taken from the original value of the lot, and they considered the remainder as being the value of the unexpropriated portion of that lot before the taking. They then deducted from that figure the diminished value of the remainder of that particular lot after the taking, and concluded that the difference was the severance damage sustained by that particular *391 lot. The remaining portions of most of the lots which had been partially taken were too shallow to enable those lots to be used for residential purposes, so defendant's experts found that substantial severance damages had been sustained by those lots. They were of the opinion that the severance damages to the lots located west of U. S. Highway 167 amounted to $29,262.03.
Plaintiff's experts used a different method of determining severance damages. They first determined the value of the entire 80.15 acre parent tract, and from that figure they deducted the value of the land actually taken. They considered the remainder to be the value of defendant's remaining property before the taking. They then appraised all of the remainder of the parent tract as of the time of the trial to determine whether there had been a diminution in value resulting from the taking. If there had been a diminution in value resulting from the taking, the appraisers would have determined the amount of severance damages by computing the difference between the value of the remaining property before the taking and its diminished value at the time of the trial.
Both of plaintiff's appraisers found, however, that there had been an enhancement, rather than a diminution, in value of the remaining property as a result of the expropriation, and thus they concluded that defendant had not sustained any severance damages. Mr. Chappuis felt that the parent tract had a value of $180,000.00 before the taking, that the property actually expropriated had a value of $17,935.00, and that defendant's remaining 72.986 acres had a value of $214,400.00 at the time of the trial. He concluded, therefore, that defendant's remaining property had been enhanced in value by $52,335.00 as a result of the taking. Mr. Cobb valued the parent tract at $160,300.00 before the expropriation, he valued the property taken at $14,328.00, and the value of the remainder at $410,000.00.
Defendant objected to the testimony of plaintiff's appraisers, basing his objection on the ground that in determining severance damages the appraisers should not be permitted to consider the value of the entire parent tract. It was argued that they could consider only the severance damages to the remaining portion of each individual lot which had been partially taken. More specifically, defendant takes the position that plaintiff's appraisers could not consider the "before" and "after" value of any of defendant's property located north of Gayle Boulevard or south of Phillip Street (as those streets are shown on the plat of Shangri-la Subdivision), and that they could not consider the fact that the defendant might redesign his subdivision or relocate some of the streets and thus utilize all of his remaining property for residential lots. The trial judge sustained that objection, but he permitted the testimony of plaintiff's experts to be taken and placed in the record under the provisions of LSA-C.C.P. art. 1636. The trial judge, however, did not consider the testimony of plaintiff's appraisers in arriving at his conclusions as to the awards which should be made.
The severance damage allowable as a result of an expropriation under LSA-R.S. 48:441 et seq., is the difference between the market value of the defendant's remaining property immediately before the taking and its diminished value as of the date of the trial. The severance damages to the remaining property cannot be presumed, and such damages will not be awarded unless the owner shows by competent evidence that the value of his remaining land has been diminished by the taking. State, Department of Highways, v. Dodge, 168 So.2d 430 (La.App.3d Cir. 1964); and State Through Dept. of Highways v. Central Realty Investment Company, 238 La. 965, 117 So.2d 261 (1960).
In arguing that the entire 80.15 acre tract cannot be regarded as a single holding for the purpose of determining severance damages, defendant relies on the principle that when the whole or a part of a particular tract is taken for public use, *392 the owner of such land is not entitled to compensation for injury to other separate and independent parcels belonging to him which results from the taking. He contends that the lots lying north of Gayle Boulevard and south of Philip Street are separate and independent lots, and that they cannot be considered in determining severence damages. He also argues that for the same reason the enhancement in value of a separate and independent lot resulting from the expropriation cannot be used to offset the severance damages sustained by the remaining portions of other lots which were partially taken.
The question of whether a landowner's holding constitutes a single tract for purposes of determining severance damages in an expropriation suit is a practical question to be decided on the peculiar facts presented in that case. The court should consider evidence on the use and appearance of the land, its legal and physical divisions and the intent of the owner, and then conclude whether or not on the whole the lots are separate and independent parcels of land. In such cases, the land itself, rather than the map, should be looked at, and one part or parcel of the land is not to be considered as a separate and independent tract merely because it is separated by an imaginary line from other lands owned by the same landowner, although it may be so considered under some circumstances. A public street or highway, a railroad, a canal or a creek running through a tract of land does not necessarily divide that land into separate and independent parcels. Louisiana Ry. & Nav. Co. v. Xavier Realty, Ltd., 115 La. 328, 39 So. 1 (1905); State, Dept. of Highways, v. Williams, 131 So. 2d 600 (La.App. 3d Cir. 1961); State, Dept. of Highways, v. Acme Brick Company, 162 So.2d 37 (La.App. 1st Cir. 1964); State, Dept. of Highways, v. Cities Service Refining Corp., 135 So.2d 636 (La.App. 3d Cir. 1961). See also Annotation, Eminent DomainDamagesSeverance, 6 A.L.R.2d 1197, 1207-14.
In the instant suit, the evidence shows that there were no improvements on the 80.15 acre tract owned by defendant. No streets had been cut, no lots had been sold and no arrangements had been made for utilities. A plat had been filed subdividing the major portion of that tract into lots, but as we have already pointed out, the mere filing of such a plat and the dedication of streets did not have the effect of making each lot shown on the plat a separate and independent tract for the purpose of determining severance damages.
Our conclusion is that in determining the measure of severance damages, if any are due, the court should consider the "before" and "after" value of all of defendant's remaining property, including the portion which lies north of Gayle Boulevard and south of Philip Street, and that the enhancement in value of any lot or parcel of defendant's remaining property which results from the expropriation may be used to offset the severance damages sustained by the partial taking of other lots. The value of each lot may be considered, since the potential use of the property for subdivision purposes is reasonably prospective and a purchaser would probably consider those values in determining the price he would pay for the entire tract, but that is done as a means of determining the market value of the whole property. The question of whether defendant could redesign his subdivision and relocate some of the streets shown thereon is material only insofar as it may have some effect on the market value of the whole of the property at the time of the trial.
Plaintiff's appraisers felt that defendant could redesign his subdivision, and thus avoid any damage to the remainder of the lots which had been partially taken, since he still owned all of the subdivision property. Mr. Gooch, one of defendant's appraisers, also felt that he could redesign it, but he did not consider that fact in determining severance damages because he was asked to estimate only the severance *393 damage to each affected lot as shown on the plat. Mr. LaPorte, another appraiser for defendant, conceded that two of defendant's lots had received special benefits which he had not taken into consideration in determining severance damages. And, Mr. Duhon stated that in making his appraisal of severance damages he had been under the erroneous impression that the streets shown on the plat had been cut, and that the lots appraised by him fronted on existing streets.
We think the trial judge erred in sustaining the objections to the evidence offered by plaintiff's experts, and that he erred in considering only the opinions expressed by defendant's experts as to severance damages. Since we think plaintiff's appraisers used the correct method in estimating severance damages, we are inclined to accept their testimony to the effect that the value of defendant's remaining property was greatly enhanced as a result of the taking, and that this enhancement in value more than offsets any severance damages which he may have sustained.
Our conclusion that the remaining property was substantially enhanced in value is supported by other evidence. The defendant testified, for instance, that after the construction of the By-pass Highway had been completed he received offers from two different oil companies to lease two corner lots at the intersection of the By-pass Highway and U. S. Highway 167, and that he was then in the process of leasing them. His testimony as to the amounts which he will receive from these leases is as follows:
"Right now, I am in the process of leasing the corner lots. Gulf Oil Company is interested in one side, and I have Continental on the other side, but it's just in the negotiation state. They have set meas I told you before, they want me tothey are going to pay me Thirty thousand ($30,000.00) dollars for one hundred fifty feet by one hundred fifty feet, on a lease, a ten year lease, and then, they want me to put Forty thousand ($40,000.00) dollars' worth of improvements on it, and they are going to pay me five (5%) percent per month, and the Forty thousand ($40,000.00) dollars."
According to our interpretation of this evidence, defendant is receiving for a ten year lease on each such lot the sum of $30,000.00 in cash, and $40,000.00 in improvements, plus other revenues.
The two corner lots which the defendant was in the process of leasing under those terms obviously were Lots 67 and 128. He alleges, and the trial court found, that Lot 67 had a value of $4250.00 prior to the taking. Defendant was allowed $1496.-91 as the value of the part taken, and the sum of $1835.38 as severance damages to that lot alone. The trial court also found that Lot 128 had a value of $4000.00 prior to the taking, and defendant was allowed $1480.26 for the part taken and $1679.82 as severance damages to that lot. Each of these two lots, therefore, were found to have a remaining value of less than $1000.-00 at the time of the trial, even though each was being leased for a cash consideration of $30,000.00 and other substantial considerations.
Defendant also owns Lot 1, which is located at the same intersection, and that may be one of the two lots which are being leased by him. But, even so, the same observation could be made as to that lot, because the trial judge found that he had sustained $2500.00 severance damage to that lot alone.
Dr. Mouledous conceded that the great enhancement in value of these two lots was due solely to the construction of this new highway. He stated, in fact that "In truth, if the State hadn't put the highway, I was going to put the highway," and that the State saved him that money.
Any severance damages to the remainder of defendant's property resulting from the expropriation may be offset by any special benefits to the remainder of *394 his property, that is, any increment in market value caused by the new improvements for which the property was taken. State, Department of Highways, v. Waterbury, 171 So.2d 790 (La.App. 3d Cir. 1965).
The evidence in this case convinces us that the defendant's remaining property has received substantial special benefits, resulting from the new improvements for which the property was taken, and that the value of these special benefits more than offsets any severance damages which he may have sustained. We conclude, therefore, that the trial court erred in awarding defendant severance damages.
For the reasons herein set out, the judgment appealed from is amended by deleting that portion of the decree which condemns plaintiff to pay unto defendant, in suit No. 23,584 on the docket of the District Court, the sum of $29,262.03 "as compensation for severance damages, with legal interest from date of filing of suit, November 30, 1962." In all other respects, and as herein amended, the judgment appealed from is affirmed insofar as it relates to Suit bearing Docket No. 23,584 of the District Court. The costs of this appeal are assessed to plaintiff-appellant.
Amended and affirmed.

*395 On Application for Rehearing.
En Banc.

On Rehearing
Before TATE, FRUGE, HOOD, CULPEPPER and PONDER, JJ.
HOOD, Judge.
A rehearing was granted in this case in order that we might reconsider our original holding that the defendant landowner is not entitled to recover severance damages.
On this rehearing substantially the same arguments were made by counsel as were presented in behalf of both parties originally. Neither party requests or suggests in any pleading, or in any written brief or oral argument, that the case be remanded for additional evidence or that any further proof is available relating to the issue of severance damages. During oral argument on rehearing we inquired specifically if either party desired that the case be remanded and counsel for both parties indicated that a remand was not desired and would serve no useful purpose.
We have reviewed the evidence and the law, and we have reconsidered all of the issues presented in the light of the arguments presented by counsel. Our review, however, has simply strengthened our conviction that all of the issues presented in
 *396 this case were disposed of correctly in our original opinion.
For the reasons which have been assigned, therefore, we hereby reinstate the judgment which was rendered originally in this matter on April 26, 1967.
FRUGE, J., dissents with written reasons.
TATE, J., dissents for the reasons assigned by FRUGE, J., in his dissent.
FRUGE, Judge (dissenting).
I respectfully dissent from the majority's conclusion that the construction of a four-lane by-pass high speed highway through the center of the defendant's property, admittedly eminently suited for residential development and, in fact, already subdivided for such development since 1961, causes no severance damages to the lots partially devoured by the highway right of way. As if unsatisfied with its conclusion that the State may ignore the existence of the platted subdivision, the majority goes further and concludes that the construction of this four-lane speedway through the defendant's prime residential tract actually benefits the landowner more than it harms him. The majority reaches this conclusion in the face of expert testimony in the record to the effect that the commercial frontage produced by the construction of this highway has almost no value because of a low demand for commercial property in and around the City of Abbeville. With due regard to the sincerity of my colleagues in arriving at these determinations, I take exception to both.
First, it is my view that this court cannot, without abandoning the rule of manifest error, dismiss as nonexistent a platted (though physically undeveloped) subdivision which is located adjacent to a developed subdivision and upon land which the landowner's experts described as being more desirable than those in the developed subdivision adjacent. The majority concedes that the question of whether the landowner's property is to be considered as a single large tract or as a series of smaller and separate tracts is a practical one to be determined from the particular facts presented in each case. The importance of the single large tract versus smaller separate tract determination is illustrated by the controversy in the instant case and results from the application of the well established principle that a landowner is not entitled to severance damages to a parcel of land separate and independent of the particular tract which is expropriated[1] and its converse, that benefits caused by an expropriation to one parcel of land cannot be set off against severance damages to a separate and different parcel though both are owned by the same person.[2]
A strong argument for treating the platted subdivision as a reality and, therefore, its lots as individual and separate units for the purposes of computing severance damages, is the fact that the State, when expropriating the highway right of way through the landowner's property, paid the landowner not one cent for the portions of the right of way overlying the streets of the (now non-existent) subdivision. The same plat which vested title to those streets in the public, thus allowing the State to construct a highway across them without compensating the landowner, also established the subdivision which the majority opinion, *397 for the limited purpose of awarding severance damages, considers nonreal. In fact, in discussing the valuation of the landowner's property for the purposes of the taking award, the majority as support for their conclusion on valuation, relies on the existence of the subdivision as illustrated by the following passage in the original opinion:
"In the instant suit, the evidence convinces us that at the time of the expropriation, the use of defendant's property for subdivision purposes was reasonably prospective, as distinguished from remotely prospective, so as to remove its potential use or classification for that purpose from the realm of guesswork, speculation and conjecture. The property had previously been surveyed and platted into lots, with streets and alleys. The streets had been dedicated for public use, and plaintiff obviously considered them to be public streets since it did not expropriate the area within any such street. The property is located immediately north of and adjacent to an existing, fully developed subdivision. The appraisers called by defendant were of the opinion that there was an immediate demand for lots in Shangrila Subdivision, and that such lots were more desirable than were those in the developed subdivision to the south."
Yet the majority, when it comes to awarding severance damages to the landowner for the partial destruction of sixty-four lots of this subdivision lightly concludes in the face of the non-compensated street taking, that the landowner's property is one large undivided parcel and that the "subdivision" is merely lines etched on a paper and deposited without legal effect in the local courthouse.
Dismissing for a moment the question of whether severance damages should be computed on a per-lot basis, I also take issue with the majority's conclusion that when the property is considered as a single 80-acre tract the construction of a four lane highway through property admittedly best suited for residential development enhances the value of the remaining property so as to offset the decrease in value of the remainder as a residential development. There is testimony in the record that because of the lack of a nearby large population center the demand for commercial property in this portion of Vermilion Parish is relatively low. The condemnor's appraisers [who testified that in their opinion the commercial frontage created by the construction of the highway through the landowner's property outweighed any severance damages] were from areas outside the parish in which the property is located, while the expert appraisers of the landowner were residents of the area and were, in my opinion, more, or at least as qualified to testify to the demand for property suitable for commercial development. Certainly, I can see no basis for a conclusion that the trial judge committed manifest error in accepting the opinion of the three local appraisers who were likely to be more familiar with the economic conditions prevailing in that locality.
In support of its conclusion that the landowner is entitled to no severance damages, the majority seizes upon isolated testimony by Dr. Mouledous to the effect that at the time of the trial he was negotiating to lease two lots located at the juncture of the new highway and Highway 165, an existing main traffic artery. In the first place, counsel for the defendant explained in oral argument before this court on rehearing that the majority opinion had erroneously construed the testimony concerning the terms of the lease. He explained that rather than receiving $30,000.00 in cash and $40,000.00 in improvements, plus other revenues, for a ten year lease, the landowner will receive $30,000.00 over a period of ten years and 5% per month on the $40,000.00 of improvements which must be furnished by the landowner.
Secondly, we have held in a case decided this very cycle that offers to purchase or lease, even though such offers are bona fide, constitute unsuitable proof of land *398 values in expropriation cases and are not admissible in evidence, being inherently unreliable and highly susceptible to fabrication. See Central Louisiana Electric Co. v. Gamburg, 200 So.2d 733 (La.App.3d Cir. 1967) and numerous authorities cited therein. If the State were seeking to expropriate the corner lots which the majority opinion uses as examples of the increased commercial value of those and other lots, would or could this court, under its holding in the Gamburg case, consider those negotiations and offers for service station leases as reliable evidence of value? I think not.
In conclusion, I re-affirm my belief in the sincerity and good faith of my colleagues in reaching the conclusion that the defendant in this suit is entitled to no severance damages. I feel, however, that they are mistaken and that the conclusion of the trial judge should be affirmed under the well settled principles of expropriation law. I therefore respectfully dissent.
TATE, J., joins in this dissent.
NOTES
[1] See Gulf States Utilities v. Comeaux, 182 So.2d 187 (La.App. 3d Cir. 1966); State through Department of Highways v. Acme Brick Company, 162 So.2d 37 (La.App. 1st Cir. 1964); State through Department of Highways v. Cities Service Refining Corp., 135 So.2d 636 (La. App. 3d Cir. 1961); State through Department of Highways v. Williams, 131 So.2d 600 (La.App. 3d Cir. 1961). See also Louisiana Railway & Navigation Co. v. Xavier Realty, 115 La. 328, 39 So. 1 (1905).
[2] See 27 Am.Jur.2dEminent Domain, § 365; 29A C.J.S. Eminent Domain § 181; 4 Nicholls on Eminent Domain, 3d ed., § 14.3, especially § 14.31 [1].