TATE, Judge.
This is an expropriation suit brought by the State Department of Highways. The defendant landowner’s appeal and the plaintiff department’s answer to the appeal question solely the amount of the award as being, respectively, either too low or too high.
The Department expropriated for highway purposes approximately 7.5 acres through defendant’s property, cutting it into two tracts; a narrow strip containing about 1.6 acres, on the south of the new highway;' and the bulk of the remainder, on the north of the new highway, contain-' ing 9.5 acres. The trial court awarded *546 $15,000 for the land taken for highway purposes, and an additional $6,800 as severance damages caused to the remainder of his property by the taking.
The appellant landowner contends that the severance damages awarded to him for the property remaining north of the highway were not based on expert testimony offered but rather was a subj ective estimate made by the trial court; while the appellee Department argues (1) that the valuation of $2000 per acre placed upon the defendant’s tract was excessive, since estimates by its three appraisers are allegedly based upon sales of land more comparable to the present property than were the sales used by the appellant’s appraisers, and (2) that the trial court’s award for severance damages for the 9.5 acres improperly included some for a one-acre tract owned by the defendant’s wife, erroneously included within the defendant’s acreage.
Prior to the taking, the defendant’s holding consisted of a 16-acre tract, about 21/2 miles west of the corporate limits of Lake Charles, in a mixed commercial, industrial, and residential neighborhood. All witnesses agreed that its most profitable likely use prior to the taking was for industrial purposes, but that its best value after the taking would be for the less profitable use as a low-cost residential subdivision, since the bulk of the property remaining would be separated from rail access by the no-access National Defense Interstate Highway to be constructed on the property expropriated.
We may, at the outset, observe that some differences in valuation resulted from the slightly different acreage quantities reflected by the different plats respectively used by the plaintiff’s and the defendant’s experts in making their appraisals. The engineer who prepared the plat offered by the landowner testified that he did so from ownership records and a personal inspection of the property, while there is no such verification of the correctness of the plat used by the Department’s appraisers as the basis of their estimates. We find no error in the trial court having adopted the acreages reflected by the former plat as the basis of its awards.
All five experts agreed that the best method of appraising the defendant’s land was by the “market data” approach, which uses recent sales between willing buyers and willing sellers of comparable properties in the vicinity as the basis for arriving at the value of property to be expropriated. Although many other properties were discussed and used by the experts in arriving at their respective estimates, we think, as both appraisers for the defendant stated and as one of the three appraisers for the plaintiff agreed (Tr. 276), that the recent sale of land most comparable to the present by its adaptability to industrial use, through its comparable acreage and rail and main highway access, was the 1957 Contlon-to-Dunham-Price sale of a 22-acre tract at a price of approximately $2100 per acre.
Higher acreage prices of other sales used by the landowner’s estimators were shown to have resulted from special circumstances or to have concerned more valuable property frontage; lower acreage prices used in the estimates by the Department’s appraisers were shown without exception to have been for far smaller tracts or those without rail access, in both cases less adaptable for industrial use than the present tract was prior to the taking. Nevertheless, the prices in these other sales discussed are corroborative of the comparability of the Dunham-Price sale to the present, after adjustments in their per-acre prices according to the less or the more favorable characteristics of those properties with relation to the defendant’s land herein.
The preponderance of the evidence thus supports the trial court’s award of $15,000, at $2,000 per acre, for the 7.5 acres taken for highway purposes.
For this reason also, the trial court correctly awarded $3000 severance damages for the loss of value through the taking to the small strip remaining south of the *547 expropriated highway right of .way, thus valued at $2,000 per acre for its 1.6 acres, before the taking, less $200 residual value after the taking. All appraisers agreed that this residual strip, about 50 feet wide by 1200 feet long, lying between the planned no-access highway and the railroad right-of-way, would be rendered virtually worthless by the taking; one of the Department’s experts, for instance, estimating a remaining value of only five percent of its worth prior to the exp:iopriation.
The defendant landowner’s appeal questions only the severance damages of $400 per acre awarded for the 9.5 acre tract remaining north of the highway right of way taken, arguing that no expert evidence in the record supports so low an award.
While the defendant’s experts did assign a far higher value for such severance damages, these estimates were not substantiated with regard to the value of the 9.5 acre tract after the expropriation through the use of any comparable sales or other market information as to the residual value of the tract for residential subdivision use. In the absence of such other specific evidence in the record by which such severance damages for this tract could be computed, the trial court’s award therefor is supported by the testimony of the Department’s experts that the tract north of the new highway sustained a depreciation in value from twenty (Tr. 267) to twenty-five per cent (Tr. 225) because of the loss of railroad frontage through the taking. (The estimate by the landowner’s appraiser of a residual value of $200 per acre, Tr. 202, referred only to the strip south of the new highway.)
Insofar as the appellee Department contends that the trial award of severance damages for the 9.5 acres erroneously included those for a one-acre tract owned by the defendant’s wife rather than the defendant, the acquisition deed (Tr. 88-89) shows that, although acquired in the wife’s name, this tract was acquired during her still-undissolved marriage with the defendant and without any recitation that it was purchased for her separate and paraphernal estate by separate funds under her administration.
This acre thus forms part of the community estate administered by the husband, in the absence of any other showing, no less than any of the other community property which was taken or damaged by the defendant Department, for which compensation is awarded by these proceedings. LSA-C.C. arts. 2402, 2404. See Daggett, The Community Property System of Louisiana (1945), pp. 15 et seq. No authority is cited to us holding that the defendant is not entitled to collect such severance damages for this contiguous portion included within a community tract damaged by the taking, just as for the other portions of the single community holding.
For the foregoing reasons, we find no error in the trial court’s award, and it is therefore affirmed at the cost of the defendant-appellant.
Affirmed.