131 So.2d 600 (1961)
STATE of Louisiana, Through DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Mrs. Lorraine Waschen WILLIAMS et al., Defendants-Appellees.
No. 63.
Court of Appeal of Louisiana, Third Circuit.
June 19, 1961.
Rehearing Denied July 12, 1961.
*601 Norman L. Sisson, Baton Rouge, for plaintiff-appellant.
G. Allen Kimball, of Jones, Kimball, Harper, Tete & Wetherill, Lake Charles, Benckenstein & Benckenstein, Beaumont, Tex., for defendants-appellees.
Before TATE, FRUGE and SAVOY, JJ.
TATE, Judge.
In this expropriation suit, the trial court awarded the defendant landowners $23,093.39 for land taken and severance damages. The plaintiff Department appeals from the award as excessive, while by answer to the appeal the defendants pray that the award be increased.
Aside from a separated .011-acre tract stipulated to be worth $27.50, this expropriation concerns the taking, for the construction of the controlled-access Interstate Expressway and a subsidiary service road, of two strips totalling 8.171 acres across the northwestern corner of a 120-acre tract owned by the defendants in Calcasieu Parish.
The preponderance of the evidence shows: Prior to the taking, this tract's entire north side fronted for three-fourths of a mile along a much-travelled hard-surfaced highway leading to nearby residential, commercial, and industrial areas. It was traversed across its northwest corner by the main branch line of a railroad. On both sides of and immediately adjacent to the railroad right of way were pipe line rights of way for crude oil and natural gas, respectively, under agreements granting the landowners the right to have any pipe lines buried (Tr. 146). The defendants' tract has a relatively high elevation and is relatively flat and wooded. The owners were holding it for sale for industrial development.
The principles which we are to apply in arriving at the award are not seriously disputed. As was recently restated in State through Dept. of Highways v. Ragusa, 234 La. 51, 99 So.2d 20, 21, "* * * the criterion to be applied in arriving at the basis for assessments of the `true value' of property *602 in expropriation proceedings is the market value or the price which would be agreed upon at a voluntary sale between a willing seller and a willing purchaser, taking into consideration all available uses to which the land might be put as well as all factors which lead to a replacement of the loss caused by the taking. This means substantially that the owner is placed in as good a position pecuniarily as he would have been had his property not been taken. * * *" (Citations omitted.) Also, "In determining the market value of property expropriated, it must be conceded that it is not merely the value for the use for which it has been applied by the owner that should be taken into consideration. The possibility for its use for all available purposes for which it is adapted and to which it might in reason be applied should be considered. The ultimate test or value in that respect is what men of wisdom and prudence and having adequate means would devote to the property if owned by them. On the other hand, possible uses which are so remote and speculative and which would require the concurrence of so many extrinsic conditions and happenings as to have no perceptible effect upon present market value should be excluded from consideration." Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491, 496.
We think that the trial court correctly applied these principles in determining that the highest and best use of this tract was for industrial purposes and in concluding that the value of the property taken (as well as of most of the defendants' tract) was $2,117 per acre.
Almost all of the experts testifying agreed that the most profitable and best use of the land was for industrial purposes. The defendants' tract is bounded at one end by land acquired by a large industry for future industrial use, and another side of the tract is separated only by a 300-foot utility-owned strip from yet another tract upon which a large industrial plant is situated approximately three-eighths of a mile distant. The subject property is in an area which has evidenced great industrial expansion. In addition, the experts testified that the land was eminently suitable for industrial use by reason of its characteristics as set forth above, including ready rail and highway access and the easy availability for industrial use of natural gas and crude oil through the pipe line facilities on the land and nearby. The possibility of the land's use for industrial purposes was not remote and speculative, as the Department's able counsel contends, but, within the reasonable probabilities of the situation, was an effective and real factor in the land's market value.
Likewise, we find no error in the trial court's finding that the recent sale most comparable to the land of the subject property was the Catlon (Colton)-to-Dunham-Price sale made within three weeks of the present taking. There, an industrial user seeking in the vicinity a relatively large tract with comparable access to rail, highway, and utilities paid $2,117 per acre in a willing buyer-willing seller transaction. While other comparable sales relied upon by the landowner might justify a higher price, and while the Department contends that the Dunham-Price tract was more valuable, after consideration of the more-favorable and the less-favorable characteristics of the subject property as compared with the Dunham-Price and other comparable tracts, and after appropriate adjustment of the comparative values, we cannot say that the trial court erred in accepting the Dunham-Price valuation of $2,117 per acre as a fair value for the land contained in the subject tract.
We may add that the alleged comparables relied upon by the Department's appraisers were shown for the most part to consist of the sales of tiny tracts (having, according to the experts, far less value for industrial use than a single large holding such as the present), or to be intra-family or closed corporation-to-stockholder or forced-sale transactions that did not represent willing buyer-willing *603 seller sales. Chiefly, the State's appraisers relied upon the Perkins-Boyer and the Powell Lumber Company-Petroleum Chemical sales at $1,000 per acre, both of which were however shown to concern lower, partly marshly land, subject to flooding by the stream which bounded and partly traversed them, and without comparable rail or highway access. See Tr. 163-165; 185-186; 232-233; 279-282; 304-308, D-3, Tr. 70, including engineering contour lines. See also Tr. 165-166, 191-192, 237, 266.
In summary, then, we think that the trial court correctly awarded compensation at $2,117 per acre for the 8.171 acres of land taken for the controlled-access Interstate Expressway.
By this expropriation, two parallel strips were taken across the northwestern corner of the defendant landowners' tract: One strip is along the northern edge of the railroad and adjacent northern pipeline right of way across the defendants' land; and this strip was to be used for the construction of the no-access Interstate Expressway. The southern strip is along the southern edge of the railroad and southern pipeline right of way; and this southern strip taken was to be used for construction of a service road, which would continue to provide access to the defendants' property southerly of it but which also would separate such property from the railroad right of way.
With regard to severance damages, the defendant landowners contend that the present expropriation had the effect of depriving of rail access the major residue of their tract left south of the Interstate Highway and the service road; and that this taking had the further effect of isolating from the remainder of the land the two pipeline right of way strips and a small half-acre triangle left in the northwest corner, thus substantially destroying their usefulness for industrial purposes and greatly impairing their value.
The trial court sustained these contentions.
In urging error in this regard, able counsel for the appellant Department principally contends that the defendants' 120-acre tract was already divided into two parts by the railroad right of way across the northwestern portion, one being a small 7-acre tract with lesser value per acre; and, further, that the pipe line rights of way on both sides of the railroad right of way already separated the land from the railway tracks. (The appellant also suggests that it is entitled to an offset against severance damages for the increment in value that will accrue to the remainder of the defendants' property through the construction of the service road, Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654, Parish of East Baton Rouge v. Edwards, La.App. 1 Cir., 119 So.2d 175; but the evidence is virtually uncontradicted that no such increment in value will so accrue to this tract, which already fronts on a main road, but that, rather, its usefulness for industrial purposes will be lessened by such service road separating it from rail access.)
In arguing that the defendants' holding cannot be regarded under the circumstances as a single holding for the purposes of awarding damages, the Department relies upon the principle that "when the whole or a part of a particular tract of land is taken for the public use, the owner of such land is not entitled to compensation for injury to other separate and independent parcels belonging to him which results from the taking." 4 Nichols, The Law of Eminent Domain (3rd ed., 1951) Section 14.3, p. 426. See Louisiana Ry. & Nav. Co. v. Xavier Realty Co., 115 La. 328, 39 So. 1.
As stated by the cited treatise authority, ordinarily whether a landowner's holding constitutes a single tract or not for purposes of determining severance damages is a practical question to be decided by the trier of fact, which trier "should consider evidence on the use and appearance of the land, its legal divisions and the intent of the owner and conclude whether on the whole *604 the lots are separate or not. In such cases the land itself rather than the map should be looked at, and one part of the parcel is not to be considered separate and independent merely because it was bought at a separate time from the rest and is separated from it by an imaginary line." Id., Section 14.31, pp. 431-432. See State through Department of Highways v. Yawn, La.App. 3 Cir., 127 So.2d 545. As the treatise continues, "a public highway actually wrought and travelled, a railroad, a canal, or a creek running through a large tract devoted to one purpose does not necessarily divide it into independent parcels, provided the owner has the legal right to cross the intervening strip of land or water." Id., 14.31 (1), pp. 433-435.
We regard this summary as correctly stating the principles to be applied in Louisiana in deciding the question, and no controlling contrary authority is cited to us. The trial court correctly applied these principles in determining that, as a matter of fact, the defendants' property consisted before the taking of a single 120-acre tract suitable for industrial purposes. For, as the evidence indicates, the owner had the legal right to cross the railroad and pipeline servitudes and the legal right to use the pipeline rights of way for many purposes, all of which under the circumstances reflected by this record constituted these rail and pipeline rights of way an asset in the integrated industrial use of the entire tract (even though there was a lessened fee value of the strips themselves actually subject to the rail and pipeline servitudes).
An award in expropriation proceedings should take into consideration "all factors which lead to a replacement of the loss caused by the taking" and should place the owner "in as good a position pecuniarily as he would have been had his property not been taken." State through Dept. of Highways v. Ragusa, 234 La. 51, 99 So.2d 20, 21. "As long as the acquisition adversely affects the market value of the remaining property, any type of injury would seem to be recoverable as severance damages." Comment, "ExpropriationConsequential Damages Under the Constitution," 19 La. L.Rev. 491, 495-496 (1959).
The trial court therefore properly awarded severance damages for the separation by the taking of several strips from the main residue, and for the deprivation of rail access to much of the property by reason of such taking.
Specifically, the severance damages consist of the following: (a) the lessened value of the northwestern corner, now cut off from the remainder of the property; (b) the lessened value of the property owned in fee by the defendants but subject to the pipeline servitudes; and (c) the lessened value by reason of the loss of rail access for the principal residue, a 94.60 acre tract.
We will discuss these items of severance damage separately.
(A) Following the taking, the landowners were left with a .577 acre triangular lot in the northwestern corner of their former tract. This was to be completely separated by the no-access Interstate Expressway from the remainder of the tract. Due to its shape and the smallness of its size, this lot was now useful only for restricted residential purposes and had a greatly lessened value. We find supported by the evidence the trial court's finding that by the taking this lot's value had been decreased 50% from its former valuation at $2,117 per acre as part of the larger industrial tract.
(B) The evidence reflects that, before the taking, the pipeline rights of way had substantial value in connection with the use of the remainder of the land for industrial purposes, since these rights of way on both sides of the railroad rights of way were immediately adjacent to the railroad tracks and could be used for loading purposes (the construction of loading docks, etc.), despite being subject to a servitude for pipe line purposes. Of course, because of the pipeline servitudes burdening it, the *605 land subject to them did not possess the full value of the unburdened land at $2,117 per acre, but instead a lesser value, fixed by defendants' experts at $1,260. We find no error in the trial court's accepting such figure as the value to the landowners of these strips before to the taking, nor in its further finding that such prior value had been diminished by 50% by the taking, since such land was no longer useful or valuable for industrial purposes as an integral part of the single tract because now separated from the main part of the property by the highway and/or the service road.
(C) The principal residue of the defendants' tract left after the taking is 94.60 acres south and east of the service road. The defendants' experts testified that the only damage sustained by this remainder as industrial property is its deprivation of rail access. The trial court allowed $3,000 for this item of severance damages.
The uncontradicted testimony indicates this to be the minimum cost to the landowner of constructing a spur line to the defendants' property south of the service road, from the main railway line along its north side. (The Department stipulated that it does not and will not object to construction of such railroad spur across the service road, providing it be done in accordance with the usual Departmental standards; the uncontradicted testimony is that the railroad and pipeline companies cooperate with such spur construction to and across their rights of way by industrial users in the area.) Although the appellant Department contends that the award for construction of a spur is speculative because at the time of trial two years ago neither the service road nor the spur line had been constructed, the evidence shows that the ultimate purchaser for industrial purposes would deduct this necessary railroad-spur construction cost from the price he offered. (Tr. 152-153.) Where very similarly an expropriated drainage ditch interfered with previous rail access of potential industrial property, the Supreme Court rejected similar arguments as to the remote and speculative nature of such an award and allowed the landowners as severance damages the cost of constructing large culverts so as to retain for the tract its rail access and its consequent availability for industrial purposes, its best and highest use. Gravity Drainage District v. Key, 234 La. 201, 99 So.2d 82. We think that the trial court here properly awarded severance damages of $3,000 as the 94-acre tract's proven lesser market value resulting from the taking.
We therefore affirm the trial court's award for the land taken and for each item of severance damages specified.
Before concluding, we should add that the appellant Department has re-urged on appeal a motion for continuance, based upon the premise that an action for severance damages by reason of an expropriation under LSA-R.S. 48:441 et seq. (Act 107 of 1954) is premature, "where a portion of a * * * tract of land is expropriated", until the landowner "is notified in writing by the department that it has finally accepted the construction of the highway project for which the property was expropriated," quoted language being from LSA-R.S. 48:451. From the language and context of this statutory provision, however, it is apparent that the legislature was providing the delay within which answer to such expropriation suits must be filed which seek further judicial proceedings to determine the compensation to which the landowner is entitled (if any) beyond the amount deposited with the ex parte taking (LSA-R.S. 48:445). While the Act provides that a failure to file the answer timely constitutes a waiver by the landowner of any defenses to the suit (LSA-R.S. 48:453), and thus of his right to contest the Department's deposited valuation of his property, the enactment does not provide that a landowner may not file his answer earlier than the delays provided by LSA-R.S. 48:450 and 451 and thus be able to secure an earlier judicial determination of the compensation to which he is entitled by reason of the taking. We *606 think that the trial court properly rejected this further contention by the appellant Department and refused to continue this suit.
For the foregoing reasons, the trial court award to the defendant landowners is
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., recused.