288 So.2d 332 (1974)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Respondent,
v.
Sam CEFALU et al., Defendant-Relator.
No. 53424.
Supreme Court of Louisiana.
January 14, 1974.
*333 Jack N. Rogers, Marshall B. Brinkley, Baton Rouge, for defendant-relator.
D. Ross Banister, Jesse S. Moore, Jr., William W. Irwin, Jr., Johnie E. Branch, Jr., Baton Rouge, for plaintiff-respondent.
CALOGERO, Justice.
This is an expropriation suit under the "Quick Taking" Statute, La.R.S. 48:441 et seq. The State of Louisiana expropriated a tract of land owned by Sam Cefalu[1] fronting on and south of the Airline Highway in Baton Rouge to construct a portion of the Interstate Route 110 (Airline Highway Interchange) in East Baton Rouge Parish. The expropriated tract, rectangular in shape, fronts 267.80 feet on the Airline Highway with a depth of 74.26 feet on the east, a depth of 74.59 feet on the west and 267.80 feet across the rear. Immediately to the rear (south) of the expropriated tract and for its entire length is a 30 foot wide tract owned by the United Gas Pipeline Corporation. To the rear (south) of this strip is an "L" shaped tract owned by Cefalu which fronts on Casper Street (the west boundary of all three parcels) for 60 feet. Upon completion of the subject highway improvement access to Airline Highway will be lost.[2]

*334 The State deposited $68,000.00 as the estimated value of the expropriated tract and the improvements situated on it. Cefalu answered claiming a greater value for the expropriated parcel and improvements, and severance damages to his remaining parcel (separated from the taken property by the 30 foot strip belonging to United), severance damages being "those compensable injuries which flow from the partial expropriation of a parcel." Dakin and Klein, Eminent Domain in Louisiana p. 67. Severance damages were claimed on the basis that there was a "unity of use" between the two parcels. The remaining parcel, as well as the United Gas strip, was used as a parking area in conjunction with the restaurant located on the expropriated parcel. Cefalu argued that he was guaranteed access over the United Gas strip under a servitude of passage granted his predecessor in title, Mrs. Julia Daniel by United Gas on July 24, 1950. That contract gave Mrs. Daniel rights of way and easements across two fifteen foot strips of the United Gas property for so long as she, her successors and assigns used and maintained the two strips.[3] As indicated on the diagram above, two rights of way were at the eastern and western extremeties of the property.
"It has long been considered a settled rule that a landowner cannot recover damages for a tract of land separate and independent from the one physically taken or invaded for a public purpose. An exception lies in the case where the landowner sustains `special' damages from the public use which peculiarly affect his separate tract and which are not sustained by the public or neighborhood generally. It follows from the general rule that if unity of use can be proved all tracts used for the same purpose as a single unitdamages for all the property will be recoverable." Dakin and Klein, supra at 105-06 (footnotes omitted)
The State argued that it was a total taking and thus severance damages were not due. They denied that the unity of use doctrine was applicable because the two tracts were separated by a strip of land owned by a third party, United Gas. They further argued that whatever use Cefalu made of the United Gas property was by sufferance only and that United Gas could have prevented that use at any time should it have desired to do so.[4]
*335 The District Court awarded Cefalu severance damages in the sum of $67,870.00, treating the matter as follows:
"Admittedly, the issue is novel; however, the court is of the opinion that severance damages are due. This is because: 1) the property historically was one common tract of ground, 2) the properties have been utilized together for a common use by one owner, and 3) there has been no abatement of ingress and egress by the owners over the right of way for thirty years. This holding is despite the Court's opinion that the original grants accorded by United Gas were personal in nature and have long since expired as to effectiveness." 273 So.2d 689, 691 (La.App. 1st Cir. 1973).
The Court of Appeal reversed the award of severance damages, stating:
"We do not agree with the trial court's determination that this taking was a partial one and merited an award of severance or consequential damages for the remainder of Mr. Cefalu's property which was separated and divided from the part taken by the intervening 30 foot strip of land owned by United Gas Pipeline Corporation. Admittedly the property south of the tract taken, including the piece owned by United Gas, has been used as an area for the parking-of vehicles for approximately thirty years, and there is no evidence that United Gas ever did attempt to impede or abate ingress and egress across its strip of property by defendant and his authors in title. However, none of the authorities cited by the defendant nor any cases revealed by our independent research involve factual circumstances analogous to the facts here. Without exception the cited jurisprudence involves instances where property is in a limited sense intervened or interrupted by servitudes, and the owners of such tracts so interrupted have the unequivocal right to cross the servitudes. These authorities in our opinion do not warrant the extension of the unity or entirety of use concept to the degree proposed by the defendant." 273 So.2d at 691-692.
The Court of Appeal then decided that Cefalu had no right to cross the United Gas property should United Gas have chosen to prevent such crossing, and he did so by sufferance only. It held that the grant of a servitude for the construction and maintenance of roads by United Gas to Mrs. Daniel, being an apparent and discontinuous servitude, prescribed by ten years non-usage, because distinctive roads were not maintained. The Court of Appeal felt that such was required by the grant. Instead the entire area without distinction (i. e., the full 30' × 267.80' United Gas property and the entire Cefalu tract south thereof) had been maintained with sand and gravel.
We granted writs upon the application of Cefalu. 277 So.2d 440 (La.1973).
Cefalu contends that common use is the key to establishing unity of use and cites three cases in support of his contention, each of which involved common use. State, Department of Highways v. Burden, 180 So.2d 784 (La.App. 1st Cir. 1965), writs refused 248 La. 913, 182 So.2d 663 (1966); State, Department of Highways v. Acme Brick Company, 162 So.2d 37 (La. App. 1st Cir.) writs refused 245 La. 1078, 162 So.2d 572 (1964); and State, Department of Highways v. Williams, 131 So.2d 600 (La.App. 3rd Cir. 1961).
The Court of Appeal distinguished those cases from the case at hand on the ground that in each of the three cited cases, the *336 landowners' remaining property had been separated from the part taken by servitudes only, over which areas the landowners had the free and legal right of access. 273 So.2d at 692-693. In the instant case the separation was not by servitude in another, but by an intervening strip fully owned by another (United Gas). The Court of Appeal held that the nature of the division was the key to whether unity of use could be legally demonstrated and in effect said that division by intervening private land would preclude a unity of use such as would allow a recovery of severance damages. In support of this conclusion, they cited Am.Jur.2d, Vol. 27, Sec. 315, including the language "where parts of the same establishment are separated by intervening private land, they are considered as independent parcels . . ." That very same passage from Am.Jur., however, goes on to say that this is so "unless they are so inseparably connected in the use to which they are applied that the injury or destruction of one must necessarily and permanently injure the other." 273 So.2d at 692 (Emphasis ours)
The Williams, Acme Brick and Burden cases were each premised upon a common use and a right to cross the intervening land in furtherance of that common use, not upon the claimant's ownership of the land burdened by the servitude.
Williams involved the expropriation of two strips totalling 8.171 acres across the northwest corner of a 120 acre tract. Cutting across that same corner, were a railroad right of way and two pipeline rights of way adjacent to and on either side of the railroad. The expropriated strips cut off access of the main residue of the landowner's tract from the railroad and pipelines, substantially decreasing its value for industrial development. The State argued that the railroad had previously divided the tract into two separate tracts and that the pipeline rights of way had then cut off any and all access of the owner's land to the railroad. The Court of Appeal rejected that argument finding instead that the applicable law to be applied was correctly summarized in 4 Nichols, The Law of Eminent Domain (3rd ed., 1951) Section 14.31(1), pp. 433-35:
"`a public highway actually wrought and traveled, a railroad, a canal, or a creek running through a large tract devoted to one purpose does not necessarily divide it into independent parcels, provided the owner has the legal right to cross the intervening strip of land or water.' . . .
"We regard this summary as correctly stating the principles to be applied in Louisiana in deciding the question, and no controlling contrary authority is cited to us. The trial court correctly applied these principles in determining that, as a matter of fact, the defendants' property consisted before the taking of a single 120-acre tract suitable for industrial purposes. For, as the evidence indicates, the owner had the legal right to cross the railroad and pipeline servitudes and the legal right to use the pipeline rights of way for many purposes, all of which under the circumstances reflected by this record constituted these rail and pipeline rights of way an asset in the integrated industrial use of the entire tract (even though there was a lessened fee value of the strips themselves actually subject to the rail and pipeline servitudes)." 131 So.2d at 604.
Acme Brick involved the expropriation of 10.339 acres east of the Kansas City Southern Railroad tracts. Severance damages were claimed and awarded for a 100 acre tract west of the railroad. The State had argued that the railroad divided the tracts so that there were two separate tracts and thus the taking was total taking. The Court relied on Williams and held that regardless of the fact of fee ownership of the railroad bed (which the State had argued was not in the landowner), "there is no question but that the defendant had a right to cross and re-cross this railroad right of way and did so many times per day, and both tracts were used for a common purpose." 162 So.2d at 42.
*337 Burden involved the expropriation of 14.059 acres out of a 1015.65 acre tract. The parent tract was "traversed by a right of way of the Illinois Central Railroad Company, a servitude of right of way of Humble Pipe Line Company, which carried ethylene, and a servitude of right of way for a high power electric line, all of which rights of way adjoined and crossed the property of defendants from north to south." 180 So.2d at 785. The expropriated strip was parallel to the rights of way already existing and adjoined the pipeline servitudes. 740 acres were on one side of the expropriation and 275 acres were on the other. The landowner had a right to cross the previously existing rights of way which gave rise to a holding that severance damages were due him as a result of the division of his property. Again Williams was relied upon.
We find the determinative factors underlying the Louisiana unity of use doctrine to be a unified use in fact, coupled with a legal right, as relates to access across intervening land, to effect that unified use.
The case before us presents a unified use in fact. The District Court found that "the properties have been utilized together for a common use by one owner." The Court of Appeal found this to be correst, "Admittedly the property south of the tract taken, including the piece owned by United Gas, has been used as an area for the parking of vehicles for approximately thirty years . . ." We find no basis upon which to quarrel with this finding of unified use.
The second determinative factor, the right to effect a unified use through a legal right of access across intervening land, is not as readily evident in the case before us and has been denied by both lower courts.
Cefalu bases his claim to a legal right to cross the intervening strip upon the July 24, 1950 grant, by United Gas to Mrs. Daniel, her successors and assigns, of a right to construct and use two fifteen foot wide roads across the United Gas property.[5]
By this grant, Mrs. Daniel acquired a servitude of passage and a servitude of road to facilitate such passage. These, Cefalu claims, are predial servitudes which operate to his benefit. The District Court dismissed this argument by holding that the grant was personal in nature and that it was no longer effective. The State has argued this position consistently in brief and oral argument. The Court of Appeal declined to decide if the grant established a predial servitude or merely established a personal right in Mrs. Daniel. Rather that Court found inferentially at least, that the grant, for its continuity, required the construction and maintenance of distinctive roads. That condition was never met as sand and gravel were placed over the entirety of the area behind the tract taken rather than simply over the two fifteen foot strips.
We do not understand the grant to be one of distinctive roads as held by the Court of Appeal. Rather, it merely gives a right to use two fifteen foot passages at either end of the property so long as the passages are maintained and used (as roads). Cefalu and his ancestors in title have used and maintained not just the two fifteen foot passages but the entirety of the United Gas property. He has not acquired rights more extensive than those contained in that grant, by virtue of such use nor has he lost the rights contained in that grant for he has used and maintained as roads (in addition to the intermittent use thereof for parking) the entire area encompassing the two fifteen foot passages at either end of the property.
*338 Thus we are confronted with the question the Court of Appeal was able to pretermit (upon their finding that "distinctive" roads were not maintained and the servitude had thus been lost by prescription of nonusage), and that is, what is the nature of the servitude granted by United Gas to Mrs. Daniel. The District Court held that it was a personal right. On the other hand, Cefalu claims that it is a presently valid predial servitude.
Predial servitudes are charges laid on an estate for the use and utility of another estate belonging to another owner. Civil Code articles 646, 647. It is necessary that there be two different estates, article 648; that the estates belong to different owners, article 649; and that the servitude have for its object the use or benefit of the estate in favor of which it is established, article 650. Servitudes may arise from contract between the respective owners, article 659.
The factual situation before us presents a contract allegedly creating the servitude, and two estates belonging to different owners. An examination of the grant reveals that it meets the basic requirement of predial servitudesit is clearly of benefit to a dominant estate, namely the Cefalu tracts. The effect of the grant was to guarantee the Cefalu tracts direct access to each other. As a result it is clear that the Cefalu tracts were benefited.
Where there is such advantage to an estate, as there is here, it is to be presumed that such right is a real servitude, although it may not be so styled, Civil Code article 756. This predial servitude was not recorded until December 8, 1971, some 21 years and seven successive owners after the grant. The Court of Appeal said in this regard that the recordation was too late to adversely effect the State even if the grant were to be construed as that of a predial servitude, this despite the fact that the law of registry is simply to protect one purchasing or acquiring rights on the faith of public records from unrecorded conveyances or encumbrances.
The State has not here acquired real property burdened by an unrecorded encumbrance such as would be the case had they acquired the property of United Gas. Were that the situation they could certainly argue the effect of non-registry. Rather they are, in this instance, simply expropriating the property, or a portion of the property, of a landowner, which rather than being burdened by an unrecorded encumbrance, benefits from the use of adjoining property by virtue of an unrecorded instrument. Non-registry of such instrument is not relevant to any right here acquired by the State, for the property they have acquired by expropriation is in no way affected by the unrecorded instrument.
The right created in Cefalu's property by the unrecorded instrument has pertinence only insofar as it aids in establishing a unity of use and a consequent severance damage to the remaining parcel. And, of course, the ultimate question is simply whether or not damages were sustained by the remaining parcel. A prospective pruchaser of both Cefalu tracts prior to the expropriation may well have been interested in seeing that the grant was recorded prior to his taking title. But the non-recordation would not have affected the market value of the property, absent, of course, an intervening conveyance by United Gas of their servient estate. We find that the unrecorded predial servitude and the parcels' consequent unitized use affected the value of the rear parcel prior to the taking, and that expropriation of the front Cefalu tract caused depreciation in the value of the rear tract, giving rise to recoverable severance damages.
Having found the existence of a predial servitude, a consequent unity of use and severance damages to the remaining parcel, there only remains to be decided the amount of severance damage.
*339 The District Court correctly calculated the severance damages due as being the sum of $67,870.00. The value of the remaining parcel before the taking as found by the court was $81,067.00 ($2.15 a square foot for 37,706 square feet). After the taking, the value of the remaining tract declined to $13,197.00 (or $.35 a square foot) because the highest and best use fell from highway commercial to residential use. The difference between the before and after value ($81,067 less $13,187, or $67,870) is due the property owner.
For the above assigned reasons the judgment of the Court of Appeal is reversed and the judgment of the district court is reinstated.
Reversed and rendered.
NOTES
[1] Norman L. Neyland was named by the State as a defendant as he was the lessee of the property taken. Neyland was dismissed as a party by virtue of a stipulation agreement between him and Cefalu giving him a portion of whatever sum Cefalu would ultimately recover.
[2] A small road will connect Casper Street to Bourgeois Street (the next street over from Casper Street going east) so that neither street will dead end.
[3] State of Louisiana

Parish of Caddo
Know all men by these presents: That United Gas Pipe Line Company, a Delaware corporation, hereinafter called "Grantor," for and in consideration of $10.00 a year ($10.00) Dollars, cash in hand to it paid, receipt of which is hereby acknowledged, does hereby grant and convey unto Mrs. Julia Daniel of Baton Rouge, Louisiana, rights of way and easements solely for the construction of roads over property owned by Grantor described as follows:
A strip of land 30' in width in the South Half (S½) of Lot 27 of the Monte Sano Highland Farms Subdivision in Section 37, Township 6 South, Range 1 West, East Baton Rouge Parish, Louisiana,
said rights of way and easements to be located as shown in red on Grantor's Drawing UA 1260, which is annexed hereto and made a part hereof.
It is expressly understood and agreed that Grantor reserves from this grant the right to construct, remove, operate and maintain pipe lines and appurtenances thereto over and through the property described above.
It is further understood and agreed between the parties hereto that the pipe line in place on the land described above will not be cased and that no damage or inconvenience will be occasioned to United Gas Pipe Line Company or its property by the construction, operation of maintenance of the roads on the two rights of way and easements granted hereby.
To have and to hold unto said Grantor, her successors and assigns, so long as said two (2) 15' strips of land are used and maintained by Grantor, her successors or assigns.
. . .
Witness the execution hereof on this the 24th day of July, 1950.
. . .
(emphasis added)
[4] It should be noted that there were two uses of the United Gas property. On the one hand, it, including the two 15' strips, was used as a parking area, a use admittedly by sufferance only. On the other hand, the United Gas property, again including the two 15' strips, was used for access to the rear Cefalu parcel (which was used for parking also). It is this second use, of the two 15' strips (to facilitate access to the rear) which Cefalu claims is guaranteed him and which give rise to his claim of there being a unity in the use of the taken and untaken separated parcels.
[5] It is interesting to note that on June 14, 1941 United Gas granted to one John Knox, an earlier predecessor in title a right to cross this same property. This servitude of passage however was clearly personal, and was not for the benefit of grantee's successors or assigns.