PICKETT, Judge:
The defendant’s tract of approximately 1142 acres of land, in Ascension Parish, was severed by two separate takings by the Louisiana Highway Department, for highway purposes. The first taking involved the construction of Louisiana Highway No. 3089, or the Donaldsonville — Sunshine Bridge Highway. (Number 10,428 on the Docket of this Court.) The second taking involved the construction of La.Hwy. No. 70, or the Paincourtville — Sunshine Bridge Highway. (Number 10,429 on the Docket of this Court.)
*838 THE FIRST TAKING, No. 10,428:
Before the taking, the defendant owned a tract of approximately 1142 acres of land with frontage on the Mississippi River, on the right descending bank of said River, located about a mile and a half below the Town of Donaldsonville. The river at this point runs in a generally east-west direction, and the defendant’s tract had a quadrangular configuration from north to south. The tract was crossed by the Texas and Pacific Railroad tracks in a manner so as to divide the north one-third, approximately, from the south two-thirds. The taking for La.Hwy. No. 3089 paralleled the railroad on the Northerly side of the tracks. The effect was to sever the north remainder from access to the railroad and to sever the south remainder from access to the river.
The dispute between the real estate appraisers involved the impact of the taking on the value of these remainders after the taking. The value of the land actually taken is not seriously contested.
On the one hand, Mr. Chester A. Drig-gers, testifying on behalf of the Department of Highways, was of the opinion that the northern and southern portions of the tract, as divided by the railroad, were already susceptible of separate evaluations as to their respective highest and best uses. In his opinion, the northern portion had a highest arid best use for industrial purposes both before and after the taking and “it could be used in the same efficiency as before the taking.” (Transcript, page 20) He felt that this acreage was still ample or sufficient to accommodate an industrial purchaser. He assigned a value of $2,000.-00 per acre to this portion and found no damages had resulted by reason of the taking. Mr. Driggers felt that the southern portion could and should be treated as a separate “rear land” tract for purposes of highest and best use and therefore valuation. In his opinion, this portion was best suited for agricultural purposes, with a potential higher use in the future. He explained that a purchaser of this tract would probably continue the agricultural use and hope or speculate that future growth and development in the area would open up new possibilities. He assigned a value of $800.00 per acre to this portion and again found no damages had resulted by reason of the taking.
On the other hand, Mr. Kermit A. Williams, the defendant’s appraiser, was of the opinion that the entire property was a prime industrial site prior to the taking and assigned an overall value of $2,000.00 per acre. In his opinion, the division of the property into two separate tracts caused damages or diminution of 10% of the before value. He reasoned that an industry would prefer the larger property for a number of reasons, but generally to avoid proximity to incompatible neighboring landowners, who, in his experience, were prone to raise objections to a plant’s operations. He also considered that the denial of rail access to the northern portion was a damaging factor and that the location of this new road would be deemed by industry to be an adverse rather than a beneficial factor.
The trial judge accepted the opinion of Mr. Williams for the following reasons, in which we concur:
“After considering the testimony of these two experts, the Court finds that the analysis presented by Mr. Williams is better reasoned and is supported by the weight of the factual evidence and the jurisprudence. Mr. Williams cited instances in which purchases of industrial tracts were made contingent upon the recission (sic) of existing roads traversing the properties. . . . Furthermore, Mr. Williams pointed out a situation of common knowledge in Ascension Parish; that the route for Highway 30 on the east side of the river as initially proposed ran through various industrial tracts, and that the industries involved united in a concerted and successful effort to have the Highway Department *839 change the location to the rear of those industrial tracts.
“In addition, the existing jurisprudence in cases of this type supports defendant’s position. In State, Department of Highways v. Burden, 180 So.2d 784 (La.App. 1st Cir., 1965) involving a similar factual situation the court stated at pages 791— 792:
“It is also plaintiffs contention that this property was divided prior to the taking by the servitude of the railroad, pipeline, and power line. The testimony convinces us otherwise for it has been established that the railroad, the ethylene gas line, and the power line traversing the property have not been considered by purchasers of land which is in industrial use as a division of the property but as an asset, whereas, a highway across the land has been considered as dividing the land and as a detriment where it traverses the property as in the present case. Plaintiff’s argument is also fully answered in the recent case of State Through Dept. of Highways v. Williams, La.App. 3d Cir., 131 So.2d 600. . . .
******
“In the Williams case it was also urged by the plaintiff that the tract was already divided into two parts by the railroad right of way across the northwestern portion and that the pipeline rights of way on both sides of the railroad right of way already separated the land from the railway tracks. With regard to this contention the Court held:
‘We regard this summary as correctly stating the principles to be applied in Louisiana in deciding the question, and no controlling contrary authority is cited to us. The trial court correctly applied these principles in determining that, as a matter of fact, the defendant’s property consisted before the taking of a single 120-acre tract suitable for industrial purposes. For, as the evidence indicates, the owner had the legal right to cross the railroad and pipeline servitudes and the legal right to use the pipeline rights of way for many purposes, all of which under the circumstances reflected by this record constituted these rail and pipeline rights of way as asset in the integrated industrial use of the entire tract (even though there was a lessened fee value of the strips themselves actually subject to the rail and pipeline servitudes.”
Likewise in the instant case the court finds that prior to the taking defendant’s property consisted of a single tract suitable as a whole for industrial purposes and that the expropriation and location of the highway across the tract it has been effectively divided into two separate tracts, neither of which is as desirable or useful as was the whole prior to the taking.
After concluding that severance damages in fact had been caused by the taking, the trial judge also accepted the factor of 10% of the before value to determine the amount thereof. The judge noted that here, as in the Burden case, supra, the State’s expert witness found no severance damages so that there was no evidence as to an alternative method of computing the same. We find no error in this ruling.
THE SECOND TAKING, No. 10,249:
The Paincourtville-Sunshine Bridge road, Louisiana Highway No. 70, runs in a generally northeast to southwest direction across the southeast portion of the defendant’s property. It divides the southerly remainder (resulting from the first taking) into a western tract of 577 acres and an eastern tract of 103 acres.
The trial judge used the adjusted value of $1,800.00 per acre to determine the value of the land actually taken. (In the suit on the first taking, he found a before value of $2,000.00 per acre which was diminished by 10% as a result of the taking.) The judge then found that the 103 acre easterly remainder, having been cut off from the *840 access to the railroad and rendered irregular in shape, had suffered a loss in value from $1,800.00 to $900.00 per acre, but that the 577 acre westerly remainder had not been adversely affected. The judge again relied on the appraisal and opinion of Mr. Kermit A. Williams in determining the amount of damage to the easterly remainder and on the adverse factors cited by another appraiser, Mr. C. C. Book, to show that this tract had in fact been severely damaged:
“The court is convinced beyond question that this east remainder has been severely damaged. In addition to the denial of rail access Mr. Book on pages 7a and 7b of his appraisal report points out the following factors:
‘Purchasers of large industrial tracts are most knowledgable and make a careful analysis of the advantages and disadvantages of each tract prior to acquisition. The presence of La.Hwy. 70, slashing diagonally across this tract and severing the tract into separate segments, will be listed as a distinct disadvantage by such purchasers.
‘These purchasers will consider the extra cost of numerous road borings for pipelines across the road and/or conveyor belt systems for transporting products and raw materials across and above the road. All industrial plants are more and more concerned with security and safety. Presence of La.Hwy. 70 on this property will add cost for industrial fencing, gates and guards at gates. Repeated crossing of this roadway will be necessary by men and equipment which will be an added safety hazard. Continual streams of fast moving vehicular traffic through the plant site will forever be a detriment to the efficient and economical construction and operation of the plant.
‘As proof that industry considers such public roads through plant sites to be detrimental, it should be noted that two sales of nearby property to industry were both conditioned upon abandonment (by the Police Jury) of public roads within the area to be purchased (1) Laws to Copolymer, Inc. of 720 acres, February, 1966 in West Baton Rouge Parish (2) Orange Grove, Inc. to Enjay Chemical Co. of 1,000 acres, June, 1966, in Ascension Parish.’ ”
Our review of the record convinces us that the reasoning of and the results reached by the trial judge are legally sound and amply supported by a preponderance of factual evidence and competent expert opinion.
Accordingly, the judgment of the Trial Court in suits Nos. 10,428 and 10,429 are affirmed. The costs of these proceedings are to be borne by Appellant, Louisiana Department of Highways, to the extent permitted by law.
Affirmed.